**Alexandria**

DARIS CLIFTON WOOLLEY

v.

JOHN E. WOOLLEY

No. 0874-85

Decided October 21, 1986

COUNSEL

Glenn C. Lewis (Lewis, Kinsey, Dack & Good, on brief), for appellant.

James Ray Cottrell (Gannon, Cottrell & Ward, P.C., on brief), for appellee.

OPINION

**KEENAN, J.** — Daris Woolley (wife) seeks reversal of a final decree which decided issues of equitable distribution and spousal support. She contends that the trial court erred in: (1) imposing a constructive trust on the proceeds of the sale of the marital residence in favor of the husband's mother; and (2) refusing to award her spousal support. We find that the trial court erred in imposing the constructive trust and that it abused its discretion in failing to consider all of the factors of Code § 20-107.1 when determining the issue of spousal support.

I.

A decree of divorce was entered on July 31, 1984, based on the one year separation of the parties. No finding of fault was made. In the divorce decree, the court specifically reserved jurisdiction to determine equitable distribution and spousal support issues. A hearing on these issues was conducted June 3-6, 1985.

The evidence established that the parties were married in 1969 and had no children. At the time of the hearing, the husband was forty-nine years old and the wife was forty-eight. The husband had served in the United States Army from the time of their marriage until his retirement approximately thirteen years later. The wife accompanied the husband to his various military assignments over the course of his career. During the marriage, her only employment outside of the home was working in a consignment shop for a period of six months.

The husband testified that after retiring from military service, he obtained employment on February 1, 1982, as Assistant to the President of United Coal Company in Bristol, Virginia. The wife did not want the husband to take the job, but eventually agreed that he should accept the position to see if it met his employment expectations. The wife went to Bristol with the husband and remained for approximately three weeks to assist him in setting up a household. She then returned to the parties' home in Alexandria and continued to live there with the husband's mother.

The husband testified that his total annual income was approximately $88,000. Of that amount, approximately $26,000 represented his military pension. The wife, who was not employed at the time of the support hearing, testified that during the separation of the parties, she had not applied for employment or job training. The wife's doctors testified that the she had a heart problem which required further testing to determine appropriate treatment. Both doctors stated that she needed to rest because of her health problems. The court also heard evidence that during the time the husband was living in Bristol and the wife remained in Alexandria, the wife lived irresponsibly, spending large sums of money each month on clothes and frequenting bars until early

morning hours.

Further evidence showed that the husband's mother had lived in the parties' Alexandria home from 1979 until November 1983, when the husband initiated divorce proceedings. At the time the parties purchased the home in 1976, the husband's mother contributed $27,500 toward the purchase price. Her name was not on the deed to the property, nor was any deed of trust executed in her favor.

In determining the monetary award pursuant to Code § 20-107.3, the court found that the husband's mother, Katherine Woolley, had "put into that property $27,500." The court then found that the house had an equity of $167,000 and ruled: "[W]e take from that $27,500 which is the money of Mrs. Katherine Woolley, which the court deems is in the nature of [a] constructive trust in the parties' hands. And the court will allow that to be deducted plus any interest at the legal rate from the time that Mrs. Katherine Woolley left that home. The remainder of that will be divided equally between the parties."

At the hearing, the parties also entered into a stipulation which in part provided that the wife would receive twenty-five percent of the husband's military pension. This stipulation was affirmed, ratified, and approved by the court pursuant to Code § 20-109.1. In the stipulation, the parties agreed as follows: "[Husband] shall pay to Daris Woolley, support and maintenance equal to 25 percent of his gross monthly military retirement pay. . . . All such payments by the husband to the wife shall be reported by the wife and characterized as alimony for all income tax purposes only and deducted by the husband." The wife stipulated that she waived all other claims against her husband's military pension. A question was then raised as to whether the pension stipulation dealt with property rights or spousal support. The wife initially informed the court that she did not consider the pension stipulation to be a provision for support, but instead thought it disposed of a property right. The husband's counsel then stated: "It is not property. To say that on the record would negate the taxable effect. It is being paid to her as support and maintenance. It is in the category of support and maintenance."

After the husband's counsel reread the stipulation, the court asked the wife if she agreed with it. The wife replied: "Yes, I agree with the stipulation." The court did not specifically rule on whether the pension provision was spousal support. However, in announcing its decision, the court stated that "the circumstances do not justify any further alimony in this case." (emphasis added). The court also stated: "[T]he court finds that in its judgment that Colonel Woolley has been generous in his award, or his agreement to let her have one-quarter of his military retirement for the rest of her life." The terms of the final decree, adopting the parties' stipulation, provided:

> Complainant shall pay to the defendant support and mainte-nance equal to Twenty-Five Percent (25%) of his gross monthly military retirement . . . . Said payments shall com-mence the month of June, 1985 and continue thereafter until such time as the complainant shall die, or the defendant shall die, whichever event shall first occur. Said payments shall not terminate merely because of the defendant's remarriage. Said percentage amount shall not be subject to increase or decrease for any reason except death of the complainant or death of the defendant. All such payments by the complain-ant to the defendant shall be reported by the defendant and characterized as alimony for all income tax purposes only and deducted by the complainant.

## II.

The wife first argues that in making its equitable distribu-tion award, the court had no basis on which to grant the hus-band's mother a portion of the proceeds of the sale of the marital residence. We agree. First, the husband's mother, Katherine Woolley, was not a party to the divorce action. Code § 20-107.3 does not authorize the court to make an equitable distribution of marital property to a non-party.[1] It is well settled that jurisdiction

---

[1] Since the trial court did not consider whether the source of the funds would justify granting a greater monetary award to one of the parties pursuant to Code § 20-107.3(E), we do not address that question.

in divorce suits is purely statutory. *Lapidus v. Lapidus*, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984). The court's judgment must not exceed its power, nor may the court employ a mode of procedure which is not in accordance with the law. *Id.* at 579, 311 S.E.2d at 788.

■ Second, there was no evidence before the trial court showing any of the elements necessary for the imposition of a constructive trust. In *Leonard v. Counts*, 221 Va. 582, 272 S.E.2d 190 (1980), the Supreme Court stated: "Constructive trusts are those which the law creates, independently of the intention of the parties, to prevent fraud or injustice." *Id.* at 588, 272 S.E.2d at 195. In *Leonard*, the Court also adopted the following definition:

> Constructive trusts arise, independently of the intention of the parties, by construction of law; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise would be a fraud. They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.

*Id.* at 589, 272 S.E.2d at 195 (quoting 1 Minor on Real Property § 462, at 616 (2d ed. Ribble 1928)).

In our review of the record, we find no evidence suggesting that a fraud or other injustice was perpetrated on Katherine Woolley when the marital residence was purchased in 1976. Further, there was no evidence before the court that Katherine Woolley was promised or believed she had acquired an ownership interest in the property. Also, her contribution to the down payment on the property was never acknowledged in any contract, agreement or other instrument. In fact, the record before us contains no evidence that Katherine Woolley's contribution was other than a gift, made freely and voluntarily. Without any evidence to support a finding of fraud or unjust enrichment, the trial court had no basis on which to impose a constructive trust in Katherine Woolley's favor. Therefore, we find that the trial court erred when it ordered that Katherine Woolley would receive $27,500 from the proceeds of

the sale of the marital property.

## III.

We turn now to the wife's argument that the trial court improperly refused to award her spousal support. She contends that the pension stipulation was not support, but rather the disposition of a property right. Thus, she argues that the trial court denied her request for spousal support. The husband asserts that the trial court did award the wife support in the form of the pension stipulation. He concedes that the trial court could have granted the wife support in addition to the amount provided in the pension stipulation, but contends that its failure to do so was a sound exercise of its discretion based on the evidence.

Initially, we reject the wife's argument that the pension stipulation was not a provision for spousal support. In the stipulation, the parties characterized the payments as alimony for tax purposes, and specifically provided that the payments would be reported by the wife as income and deducted by the husband.

At the support hearing, the wife did express some confusion as to whether the pension payments were spousal support or the disposition of a property right. The husband's counsel then emphasized that the stipulated payments were support and maintenance, and not part of a property disposition. The court again asked the wife if she agreed with the stipulation. She stated that she agreed. Because the record shows that the wife was given a concise clarification of the nature of the stipulation, and thereafter agreed to its terms without question or objection, we must conclude that she accepted the stipulation with an understanding of its content.

The trial judge, apparently proceeding from the premise that the pension stipulation was support, found that "the circumstances do not justify any further alimony in this case." (emphasis added). In reaching this finding, the court stated its belief that the husband had been generous in agreeing to give the wife one-quarter of his military retirement payments.

■ In determining spousal support, a trial court is required to consider all of the factors contained in Code § 20-107.1. Failure to do so constitutes reversible error. *Thomasson v. Thomasson*, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983); *Bristow v. Bristow*, 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980); *Dodge v. Dodge*, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986).

■ In *Thomasson*, the Supreme Court explained the standard to be applied on appellate review:

> Where the chancellor has given due consideration to each of these factors, as shown by the evidence, his determination as to spousal support will not be disturbed except for a clear abuse of discretion.

225 Va. at 398, 302 S.E.2d at 66 (emphasis added)(citations omitted).

In *Thomasson*, the chancellor denied the wife spousal support based on her psychiatrist's testimony that her condition would improve if she returned to work. The chancellor found that if spousal support were awarded, the wife would not obtain work, and her condition would not improve. The court upheld the chancellor's denial of spousal support, finding that "[h]is written opinion makes it clear that he considered all of the factors enumerated in Code § 20-107 as shown by the evidence." *Id.* at 399, 302 S.E.2d at 66.

When, as in the present case, the chancellor fails to state any basis for reaching a given conclusion, the reviewing court is hindered in its task. This problem is further explained in *Campolattaro v. Campolattaro*, 66 Md. App. 68, 502 A.2d 1068 (1986), where the court stated:

> Aside from obvious defects which may be revealed when only the end product of deliberation is announced, the chancellor who fails to provide at least some of the steps in his thought process leaves himself open to the contention that he did not in fact consider the required factors. While we will start from the premise that the chancellor knows the law and

properly applied it even when he or she does not mention an applicable statute, we acknowledge that announcing only the end product of deliberations does increase the possibility that an appellate court will conclude otherwise.

*Id.* at \_\_\_\_, 502 A.2d at 1075.

■ The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors. This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. It does mean, however, that the court's findings must have some foundation based on the evidence presented. Therefore, we hold that in a determination involving spousal support, if the court's findings do not have evidentiary support in the record, then the court has abused its discretion.

As we noted earlier, the facts of this case do not involve a total denial of spousal support. Pursuant to the stipulation of the parties, the court awarded the wife approximately $6,500 annual support, representing one-quarter of the husband's military pension. The issue before us, then, is whether the trial court abused its discretion in denying the wife additional support. After hearing evidence for three days, the chancellor stated his conclusion that "the circumstances do not justify any further alimony in this case." He did not explain what any of those circumstances were. In contrast, when he disposed of the parties' marital property pursuant to Code § 20-107.3, he stated specific factual findings as they related to the statutory criteria. Since the chancellor made no factual findings or explanation of what circumstances influenced his decision to deny additional spousal support, we do not know whether he considered all of the factors contained in Code § 20-107.1 in making his support determination. Therefore, we must examine the record to determine if his decision was supported by evidence relevant to these factors.

The uncontroverted evidence showed that at the time of the support hearing, the husband was earning $88,000 per year and the wife was unemployed. The wife had no current job skills or

educational training. At the end of their sixteen-year marriage, both parties were approaching fifty years of age. During the marriage, the parties enjoyed an above average standard of living consistent with the husband's employment. Two physicians testified that the wife had a heart condition which needed further diagnosis and treatment. Both stated that her condition required rest on her part. Evidence was presented, however, on behalf of the husband that the wife appeared healthy and regularly engaged in strenuous physical exercise.

In determining the monetary award pursuant to Code § 20-107.3, the court provided the wife with approximately $15,000 more than the husband (of net assets totalling $208,000), stating: "She has some expenses. She will need money to reestablish herself. She said that she wanted to go to school and she wanted to get to work." Thus, in the context of dividing the marital property, the chancellor apparently did consider the wife's desire to secure additional education.

Also when determining the amount of the monetary award, the court commented on the physical and mental condition of the parties, pursuant to Code § 20-107.3(E)(4). The chancellor stated: "[The wife] is well and capable of taking care of herself and getting work and doing what is necessary to support herself. It is significant that when she was on the stand that she made absolutely no complaint about her health in any way." Notwithstanding the expert medical testimony, we find that lay testimony in the record supported the court's conclusion that the wife was an apparently healthy person based on the evidence that she regularly engaged in strenuous physical exercise.

Assuming that the court considered this factor, as well as the other factors of Code § 20-107.3 which are also contained in Code § 20-107.1, we are still unable to find evidence in the record which would support a conclusion that the chancellor considered the criteria contained in Code §§ 20-107.1(1) and (2). Under Code §§ 20-107.1(1) and (2), the court was required to consider, among other factors, the parties' earning capacities, resources, education, training, and their ability to secure education and training. The evidence regarding these factors showed an overwhelm-

ing disparity in the husband's favor. He was earning a substantial salary while the wife was earning nothing. Moreover, the wife had no recent training, education, or work experience, which would be required to enter the job market, particularly at her age. Based on our review of the record, therefore, we must conclude that the chancellor abused his discretion in failing to consider all of the statutory criteria contained in Code § 20-107.1.

In summary, therefore, we find that the chancellor erred in granting Katherine Woolley a portion of the proceeds from the sale of the marital home, and that he abused his discretion in failing to consider all of the factors of Code § 20-107.1 in denying the wife further spousal support. Accordingly, the decree appealed from is reversed and remanded for proceedings consistent with the rulings expressed herein.

*Reversed and remanded.*

Baker, J., and Coleman, J., concurred.