COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


SARAH RUTH WOFFORD TATUM

v.    Record No. 0438-00-3

JOSEPH KENNETH TATUM                    MEMORANDUM OPINION[*] BY
                                    JUDGE SAM W. COLEMAN III
JOSEPH KENNETH TATUM                       DECEMBER 5, 2000

v.    Record No. 0443-00-3

SARAH RUTH WOFFORD TATUM


                FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                        Roy B. Willett, Judge

            Cheryl Watson Smith (Mundy, Rogers & Frith,
            L.L.P., on briefs), for Sarah Ruth Wofford
            Tatum.

            William H. Cleaveland (Rider, Thomas,
            Cleaveland, Ferris & Eakin, P.C., on briefs),
            for Joseph Kenneth Tatum.


    Both Sarah Tatum (wife) and Joseph Tatum (husband) appeal the

circuit court's equitable distribution, spousal support, and child

support awards.  Husband argues that the circuit court erred in

reopening its equitable distribution order to consider the value

and distribution of his stock options.  Wife argues that the

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

circuit court erred in: (1) valuing husband's stock options on the date of separation; (2) offsetting the husband's spousal support obligation against wife's child support obligation; (3) failing to consider the spousal support factors set forth in Code § 20-107.1; (4) imputing income to her; and (5) awarding her insufficient spousal support. For the following reasons, we reverse and remand.

## I. BACKGROUND

Husband and wife were married January 5, 1980. They were divorced by final decree on May 27, 1997. Two children were born to the marriage. Wife is a registered nurse, but at the time of the parties' separation, wife had not been employed as a clinical nurse for nearly fourteen years. During the marriage, husband was employed by Wachovia Bank and, as part of his compensation, husband received stock options, all of which were acquired during the marriage and prior to the final separation. After the divorce, husband exercised his options and purchased 4,700 shares of stock for approximately $142,175. In December 1998, after husband exercised the options, he sold the stock for over $400,000.

## A. Stock Options

A hearing on the equitable distribution issues was conducted in June 1997 and the trial court entered an "Interlocutory Decree" dated October 1, 1997, in which the trial court equitably

distributed the parties' retirement accounts, vehicles, 401K plan, and husband's interest in C&T Properties. The trial judge ordered that the marital residence be sold and the parties divide the proceeds equally and that "they shall endeavor to agree upon the distribution of the household furnishings." The decree further provided that the "court takes under advisement issues concerning child support, spousal support, and an award of attorney's fees and costs, pending the sale of the marital property and other matters set forth in this order." At the hearings preceding the October 1, 1997 decree, the parties presented no evidence concerning the value or ownership of husband's stock options and the decree did not mention the stock options. The decree provided that in the event the parties were not able to agree upon the sale or value of certain assets they "may set the matter for hearing."

In August 1998, after all other equitable distribution issues had apparently been resolved, wife filed a notice for a "pre-trial conference" "for the purpose of addressing a mechanism for the resolution of the remaining issues in this matter." Wife asserted, among other things, that the classification, evaluation, and distribution of husband's stock options remained an issue to be decided. In January 1999, wife filed a motion for entry of an order finding that husband's stock options are marital property and awarding wife an equitable share. The record shows that wife was informed and knew of the existence of the stock options as

- 3 -

early as November 22, 1996, when she was provided the information concerning husband's ownership in "Supplemental Answers to Defendant's Interrogatories."

The trial court referred the issue to a commissioner in chancery. The commissioner opined that the trial court had jurisdiction to hear and decide the issues concerning the stock options because the trial court's October 1, 1997 decree was interlocutory and was not a final decree equitably distributing all of the parties' property. The commissioner specifically noted that the October decree provided, with respect to the parties' 401K and thrift savings plan, "[t]hat the parties shall endeavor to reach agreement concerning the value of said contributions. If the parties are unable to reach agreement, then the parties may set the matter for hearing." The commissioner further found that, although husband informed wife of the stock options on or about November 22, 1996, prior to the equitable distribution hearing, the failure by either party to raise the issue at the equitable distribution hearing was "a mutual mistake or oversight." Thus, the commissioner ruled that the stock options were marital property and that she would proceed to equitably distribute them. She further ruled that the valuation date for the stock options should be April 8, 1996, the date the parties separated, because the parties agreed to that evaluation date as to the other property at the December 21, 1998 hearing. The commissioner

- 4 -

further found that as of April 8, 1996, the value of the options "on paper" was $12,925 but, because of the speculative nature of the options, they had zero marital property value.

The trial court's final decree dated January 27, 2000 provided:

> [Wife's] failure to raise the stock options as an issue at the equitable distribution hearing in this matter in June 1997 was an oversight by [wife]. The court concludes that the Commissioner erred by finding that the total value of the marital share of stock was zero. The court finds that the value of the Wachovia stock at issue was $12,925 on the date of the separation of the parties, April 8, 1996, and awards [wife] 50% of that sum, which is $6,462.50.

### B. Child and Spousal Support

As to matters of child and spousal support, in May 1996, the court had entered an interlocutory decree ordering that the parties' two children shall reside with wife at the marital residence, husband shall pay wife $1,323 per month in temporary child support, and pay the mortgage and utilities for the marital residence. In February 1997, the circuit court modified the spousal support award and ordered husband to pay wife $500 per month in temporary spousal support. In April 1998, the juvenile and domestic relations district court transferred custody of the two children to husband and ordered wife to pay husband $128.31 per month in child support. Husband appealed the child support order, arguing that wife should be required to pay more child

support because she was voluntarily unemployed and income should be imputed to her.

At the circuit court hearing conducted in March 1999, wife testified that she had enrolled in the seminary at Baylor University in Waco, Texas in November 1998. Prior to relocating, wife had been employed at Gentle Shepherd Hospice for approximately six months at an annual salary of $30,000 with the possibility of earning "on-call pay." She voluntarily left that employment in July 1998 because she was unhappy at the position and was required to perform duties for which she was not qualified. When she left her employment, wife knew that she intended to pursue her studies in women's ministries. Wife further testified that she could no longer pursue a career in clinical nursing because she has been diagnosed with dyslexia.

At the time of the March 10, 1999 child and spousal support modification hearing, wife was paying husband $128.31 per month in child support and husband was paying wife $500 per month in spousal support. Following the hearing on child and spousal support, the trial court suspended both support obligations, giving the following explanation:

> The Court recognizes the authority it has to order spousal support and certainly to order child support. I don't know that I have done this before, but, based upon any figures I would have used and the tax consequences to him deducting spousal support and her having income on it and he clearly having the exemptions of the two

- 6 -

child dependants, the Court finds that is imminently equitable with all the history of this case, certainly with the expense he is about to incur and which I believe will be incurred regarding counseling for these . . . girls.

At a hearing on April 2, 1999, the trial court further stated:

It was my opinion that when tax consequences were considered on the spousal support and the amount of child support that would have been awarded and the acrimony between the parties, that there would have been a virtual equality in payment one to other, that is, the former husband to the former wife and vice versa, in spousal support and the child support.

In an effort to limit and end this litigation, the Court simply suspended both based upon those very similar numbers and based upon the total inability of these people to communicate and get along hoping that they could then communicate and deal with one another with the children, who are more important than any of these other things that we are talking about.

I said to counsel on the face of it that doesn't look like the proper thing for the Court to do, but I hope everybody understands why the Court did as it did on the ongoing support payments.

## II.  ANALYSIS

### A.  Stock Options

#### 1.  Finality of October 1997 Decree

Neither party raised the issue of the stock options at the June 1997 equitable distribution hearing.  Husband contends that the October 1, 1997 decree which followed that hearing was a

final decree and Rule 1:1 precluded the trial court from "reopening" the equitable distribution order to consider the stock option issue. However, the trial court ruled that the equitable distribution issues had not been finally litigated and wife was not precluded from having that issue decided. After considering the stock option evidence, the court valued the stock options as of April 8, 1996, the date of separation, at $12,925 and ordered that husband pay wife half of that sum.

"A final decree is one 'which disposes of the whole subject, gives all the relief that is contemplated and leaves nothing to be done by the court.'" Wells v. Wells, 29 Va. App. 82, 85-86, 509 S.E.2d 549, 551 (1999) (quoting Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712 (1994) (internal quotation marks and citations omitted)).

We agree with the trial court that the October 1, 1997 equitable distribution order did not dispose of all the equitable distribution issues and, therefore, was not a final decree. The decree provided for the sale of the marital residence and the distribution of the proceeds, distribution of the husband's retirement accounts, and distribution of husband's partnership interest in C&T Properties. However, the trial court did not determine the value of husband's interest in C&T properties or equitably divide that asset. Rather, the court directed that the parties shall either agree to the value of the husband's interest

- 8 -

or engage the services of an appraiser. If the parties could not reach an agreement, the matter would be scheduled for a hearing. Clearly, the court was providing a method to evaluate this marital asset. Further, the court stated, with respect to husband's combined 401K and Thrift Savings Plan, that wife shall receive one-half of the balance of the account, less any contributions made by husband after the date of separation. The court ordered that "the parties shall endeavor to reach agreement concerning the value of said contributions. If the parties are unable to reach agreement," then the matter may be set for a hearing. Here again the court directed the method by which the court and parties were to value this marital asset. Additionally, the trial court stated that it was taking the attorney's fees and spousal and child support issues under advisement, pending the sale of the marital home.

Accordingly, we find that, although the October 1, 1997 equitable distribution order purported to distribute the parties' assets, some of the assets had not been valued, and valuation was contingent upon agreement of the parties or was pending a further hearing. Therefore, the October decree was an interlocutory decree, and the trial court retained jurisdiction to consider further valuation and distribution of the marital assets.

## 2. Valuation of Stock Options

The trial court conducted the first evidentiary hearing on the marital assets in June 1997 and entered its interlocutory equitable distribution decree in October 1997. After the court entered the interlocutory equitable distribution decree, wife requested equitable distribution of husband's stock options. The trial court conducted a separate hearing in September 1999 solely for the purpose of determining the classification and value of the stock options, all of which had been acquired during the marriage. In December 1998, prior to the equitable distribution hearing, husband had exercised the options and purchased the stock.

We hold that the trial court erred in finding that the value of the marital asset was the value of the stock options as of the date of separation, rather than the net value of the stock at the time the stock had been sold. We do not agree that wife acquiesced in using the date of separation as the date for valuing the stock options merely because she may have agreed upon that date for valuing other marital assets. The fact that she acquiesced in using the separation date as the appropriate date for valuing the property which the court was considering is not binding where the court later considers the value of other property that has significantly appreciated or depreciated in value due solely to passive factors. The valuation date should be that date which most accurately reflects the fair market value of

the asset to the parties.  See Rowe v. Rowe, 33 Va. App. 250,

264-65, 532 S.E.2d 908, 915-16 (2000).

Admittedly, had the court been required to value the stock

options as of the separation date, their value would have been

speculative as the special commissioner and trial court ruled.

However, because the valuation hearing for this asset took place

after the options had been exercised and after the stock had been

sold, the value of the marital asset had been fixed and the court

erred in not using the date of the evidentiary hearing to

determine the value of the asset.

> "We have stressed that the trial judge in
> evaluating marital property should select a
> valuation 'that will provide the Court with
> the most current and accurate information
> available which avoids inequitable
> results.'"  Gaynor v. Hird, 11 Va. App. 588,
> 593, 400 S.E.2d 788, 790-91 (1991) (quoting
> Mitchell v. Mitchell, 4 Va. App. 113, 118,
> 355 S.E.2d 18, 21 (1987)); see also Wagner
> v. Wagner, 16 Va. App. 529, 531, 431 S.E.2d
> 77, 78 (1993) (en banc) (stating that "the
> reasons for re-valuation on remand are the
> same as in the original hearing -- to obtain
> the most accurate valuation and equitable
> distribution").  We held [in Mitchell] that
> because the Code "does not fix a date for
> determining the value of [the parties'
> assets], the trial court must select a
> valuation date if the parties cannot agree
> to one."  Mitchell, 4 Va. App. at 118, 355
> S.E.2d at 21.  The 1998 amendments to Code
> § 20-107.3(A) codified the rule announced in
> Mitchell.  Code § 20-107.3(A) provides:
>
> "The court shall determine the value of any
> such property as of the date of the
> evidentiary hearing on the evaluation issue.
> Upon motion of either party made no less

- 11 -

> than twenty-one days before the evidentiary
> hearing the court may, for good cause shown,
> in order to attain the ends of justice,
> order that a different valuation be used."

Rowe, 33 Va. App. at 263-64, 532 S.E.2d at 915.

Here, the court erred by not adhering to the mandate of Code § 20-107.3(A) to use the date of the evidentiary hearing for evaluating the marital asset. We hold, therefore, that the trial court erred in failing to value the stock options as of the date of the September 1999 evidentiary hearing, which was after husband had exercised the options and the value of the asset had become fixed. On remand, the trial judge shall determine the actual net value of the stock as of the date of the evidentiary hearing and shall then equitably distribute the net value of the marital asset between the parties in accordance with the provisions of Code § 20-107.3(E). While we note the husband invested significant funds in order to exercise the options, on these facts the capital investment to exercise the options, even if partly from separate funds, was not at risk since the stock had to be sold immediately and, therefore, the increase in value was marital because it was not the result of the husband's active efforts. See Code § 20-107.3(A)(1).

## B.  Child and Spousal Support

We next consider the propriety of the trial court's order "offsetting" husband's spousal support obligation against wife's child support obligation and suspending any child or spousal

- 12 -

support awards. We hold that the trial court erred by offsetting the support obligations, by failing to calculate and order the payment of the child support and spousal support awards, and by suspending the determination of the child or spousal support award.

In April 1998, the juvenile and domestic relations district court transferred custody of the parties' two children to husband and ordered wife to pay husband $128.31 per month in child support. While it is unclear from the record how the court determined the $128.31 amount, apparently the juvenile and domestic relations district court had awarded this amount based upon the parties' actual incomes and by applying the child support guidelines. The juvenile and domestic relations district court also had ordered husband to pay wife $500 per month spousal support. Thus, at the time the circuit court heard the child and spousal support issues, the wife had been ordered to pay husband $128.31 per month for support of the two children and husband had been ordered to pay wife $500 per month for spousal support.

When the issues of child and spousal support then came before the trial court for a permanent award, the wife took the position that her $500 per month spousal support award should be increased and that no income should be imputed to her for purposes of either spousal or child support because she is a full-time student and is not capable of gainful employment in her prior profession as a

nurse. The husband contended, on the other hand, that wife is fully capable of gainful employment as evidenced by her last employment at an annual salary of $30,000 and that income should be imputed to her for purposes of reducing her spousal support award and increasing her child support obligation.

The trial court found that wife was voluntarily unemployed, that she was capable of being gainfully employed, and imputed income of $30,000 per year to her. However, without determining the amount of child support to which the children were entitled or the amount of spousal support to which the wife might be entitled, the trial court then suspended husband's spousal support obligation and wife's child support obligation.

As we have held, "pursuant to Code § 20-108.1(B) . . . the court has an affirmative duty to calculate expressly the presumptive guideline amount of child support under the guidelines and, if it deviates from that presumptive amount, to explain adequately the basis for such deviation." Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000). "The trial court's deviation from the child support guidelines without first calculating and stating the presumptive amount of support due constitute[s] reversible error." Id. at 283-84, 532 S.E.2d at 925. Moreover, an award that fails to state the presumptive amount of the award or the basis and amount of the deviation, does not provide an adequate basis for future

- 14 -

modifications of support.  See id. at 288-89, 532 S.E.2d at 927.

As we have stated,

> to allow the non-conforming award to stand
> without adequate explanation as to how the
> amount of support was determined would
> seriously handicap a court overseeing future
> modification proceedings because that court
> would have an insufficient understanding of
> the manner in which the existing award was
> set and the extent to which a change in
> circumstances might warrant a change in the
> amount of support.

Id. at 289, 532 S.E.2d at 927 (citation omitted).

Here, the trial court, failed to "calculate expressly the presumptive amount of child support under the guidelines." Although the pre-existing award of $128.31 per month from the juvenile and domestic relations district court was presumably based on the child support guidelines, the circuit court, when considering permanent child support, is not relieved of the responsibility to determine the presumptive amount based on the child support guidelines.  Even assuming that $128.31 would have been the correct presumptive amount under the guidelines, by offsetting or suspending the award the court deviated from the guidelines without making a sufficient explanation, particularly without addressing the effect that imputed income would have upon the determination.  Although husband asks us to approve the trial court's ruling suspending his right to receive child support, he does so provided we suspend and offset his obligation to pay spousal support.  We hold that husband's attempt to waive

child support is ineffectual; the father cannot waive the children's right of support from a parent. See generally Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994) ("[P]arents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support."). Child support and spousal support involve separate rights and obligations between different parties and are to be determined based on separate statutory factors. Cf. Code §§ 20-107.1(E) and 20-108(B). For these reasons, a court is not authorized to offset one support obligation against another or to suspend those obligations. See Mosley v. Mosley, 30 Va. App. 828, 837, 520 S.E.2d 412, 416-17 (1999) (holding that "a disabled, non-custodial parent may not receive credit for social security disability payments in excess of that due for child support as against past-due spousal support" because payments of child support are for the benefit of the child and are based on the child's status as a dependant of the non-custodial parent, whereas spousal support is awarded based on the circumstances of the parties' prior marriage); see also Poland v. Poland, 895 S.W.2d 670, 672 (Mo. Ct. App. 1995) (holding that husband was not entitled to offset monies he owed wife for child support against monies wife owed him pursuant to property settlement agreement because wife received child support monies in trust

for the benefit of the children). Accordingly, the court erred in failing to expressly determine the child support award and the spousal support award amounts and erred in offsetting the awards against one another. Thus, we reverse the trial court's ruling and remand the spousal and child support awards to the trial court for determination.

In regard to the spousal support award, wife also contends that the trial court erred by failing to consider the factors articulated in Code § 20-107.1, by imputing $30,000 in income to her, and by making an insufficient award of spousal support. Because we have held that the trial court erred in its equitable distribution decision in valuing the stock options and in offsetting and suspending wife's child support obligation and husband's spousal support obligation, on remand the trial court must necessarily reconsider an award of spousal support in light of the factors set forth in Code § 20-107.1(E). See Code § 20-107.1; Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986) (holding that failure to consider the factors set forth in Code § 20-107.1 in determining the spousal support award constitutes reversible error). Therefore, we do not separately address the insufficiency of the spousal support award or the failure to apply the statutory factors since those matters will be reconsidered on remand. However, because the trial court's finding that wife was voluntarily unemployed and imputing $30,000

in income to her will affect the support awards on remand, we must address that issue.

"The decision to impute income is within the sound discretion of the trial court and its [decision] will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (citation omitted). In determining whether to impute income, "the trial court must consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children." Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citation omitted). Wife acknowledges that she voluntarily left her prior employment to attend the seminary and that her decision to do so rather than work is a sufficient basis to support the imputation of income. However, she argues that the amount of income imputed to her, $30,000, is not supported by the record. We disagree. At the time wife voluntarily left her employment with Gentile Shepherd Hospice, she was earning $30,000 per year plus on-call pay. Although wife asserted that she left her employment because she was displeased with the hours and type of work, she admitted that she voluntarily terminated her employment because she no longer wanted to pursue a career in nursing. See Antonelli v. Antonelli, 242 Va. 152,

156, 409 S.E.2d 117, 119-20 (1991) (finding that spouse is not prohibited from voluntarily changing employment; however, when the party, under a court-ordered obligation to pay child support, chooses to pursue other employment, the risk of the spouse's success is upon the spouse not the spouse's children). Accordingly, we hold that the trial court's order imputing $30,000 annual income to wife, based on the facts that existed at the time of the trial court's order, was not erroneous and shall be considered by the trial court on remand to the extent that the imputation justifies a deviation from the child support guidelines, Code § 20-108.1(B)(3) and to the extent that it affects a spousal support award, Code § 20-107.1(9), (10) and (11). However, we note that, on remand, the trial court may need to consider any change in circumstances which, including but not limited to intervening employment, may have occurred during the pendency of the appeal that would affect the amount of income imputed to wife during any ensuing time periods.

For the foregoing reasons, we reverse the trial court's decree and remand for further proceedings consistent with this opinion.

                                    Reversed and remanded.