COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


PAMELA L. JACOBSON-KAPLAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0509-05-1                      JUDGE JAMES W. HALEY, JR.
                                                          DECEMBER 6, 2005
ADAM J. KAPLAN


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                         Edward W. Hanson, Jr., Judge

              Kristen D. Hofheimer (Charles R. Hofheimer; Hofheimer/Ferrebee,
              P.C., on briefs), for appellant.

              Henry M. Schwan for appellee.


        In this divorce proceeding, Pamela Jacobson-Kaplan, wife, asserts that the trial court erred

in the following:  1) imputing income to her in the amount of $2,300 per month; 2) calculating

Dr. Adam Kaplan's (husband's) income; 3) awarding her $1,500 in spousal support for only two

years duration, with a reserve duration of almost nine years; 4) computing child support[1];

5) allocating some marital accounts and $110,000 in marital funds partially expended by husband

post-separation; 6) distributing accounts in the children's names as part of the equitable distribution;

7) failing to address or award her a share of husband's Army Reserve retirement; 8) entering a final

divorce decree while reserving the issue of child custody; 9) failing to award her attorney's fees; and

10) ordering the marital residence to be sold.  We affirm in part and reverse in part.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant withdrew her assignment of error as to child support at oral argument.

I.

The parties were married in 1983 in Cincinnati, Ohio. At the time of marriage, husband was an undergraduate student and wife was a graduate student. During the marriage, husband attended a graduate program and medical school, completed his internship and residency, and pursued a fellowship in transplant surgery. Wife worked to support the family while husband completed his education. The parties have three children aged 18, 15, and 12.

Wife, aside from periods of maternity leave, worked constantly from the time of the parties' marriage until 1997, when the family moved to Mississippi. Her various positions included being a clinical secretary, billing manager, and other similar positions, for which she earned between $11,000 and $17,000 a year. At one point she declined a position as departmental head of the billing office with a hospital because of an impending move. After moving to Mississippi, she did some work, albeit unpaid, helping husband to recover $110,000 in uncollected surgical billings. She also worked to help set up husband's solo practice. After the parties moved to Virginia Beach in 2000, wife was a technical editor working out of the home earning $1,000 each month for parts of 2001 and 2002. Aside from these four hours a month, she has not worked since moving to Virginia.

The parties separated on August 27, 2001, when husband moved out of the marital residence. Wife filed her original bill of complaint commencing this action on September 4, 2002. The case was referred to a commissioner in chancery who received evidence and filed his report in the circuit court.

During the commissioner's hearing, husband presented the expert testimony of Mr. Francis Charles DeMark, Jr., a certified rehabilitation counselor. Mr. DeMark testified as to the ability of wife to find work in the Tidewater area. He opined that she could serve as an office manager or accounting and billing manager with a salary in the range of $28,000-30,000, with the ability to move up in salary to perhaps "$40,000 given a year or two." Mr. DeMark also presented other

possible positions as an administrative assistant or technical writer in the $25,000-28,000 range. He provided numerous concrete examples of jobs available in the region paying comparable salaries with qualifications matching wife's skills.

Wife presented no evidence of her present ability to obtain employment other than her own opinion that she could make $14,000 a year before taxes. She gave no concrete examples of available positions paying such a salary or even in what field such work would be. She also opined that both her children and her psychological problems would make it difficult to work outside the home, again without providing any evidence to back up her assessment. After considering all the evidence, the trial court imputed to wife income of $2,300 per month, or $27,600 per year.

Husband's income was also a point of contention between the parties. Shortly before the commissioner's hearings, husband signed a recruiting agreement with St. Joseph's Hospital in Parkersburg, West Virginia. As part of this agreement, the hospital agreed to provide a one-year income guarantee of $198,000 with various provisions for forgiveness and/or repayment based on service. The agreement required that husband purchase a tail policy from his Virginia malpractice insurance carrier with a premium of $78,064 in addition to his West Virginia malpractice insurance, which has a premium of $27,921.36. By combining these numbers, the trial court stated that husband's income would be $80,904. The court, however, added together the premium of the Virginia malpractice insurance and one-half that premium again, rather than using the premium of the West Virginia insurance. It deducted the total from the guaranteed income of $198,000 and then arrived at the net income of $80,908.

After calculating husband's income and imputing income to wife, the divorce decree ordered husband to pay spousal support in the amount of $1,500 per month. The trial court justified this number based on its consideration of "the evidence and al [sic] applicable law and all factors required by law." The court ordered support for a duration of two years with a reservation to both

parties of eight years and eleven months. The court gave no rationale for the limited duration of the support.

In addition to his regular employment as a surgeon, husband has been in the Army reserves since 1992. As part of this service, he has been building points toward retirement. He has accumulated only about 600 such points, with around 10,000 required to receive benefits, making it unlikely he will ever qualify. While at one point the commissioner stated that he intended to split any such retirement evenly, no mention of the reserve pension appeared in his report. The divorce decree, however, did order that wife shall have no part in any Army Reserve retirement as part of the equitable distribution.

During the commissioner's hearing, the parties also presented evidence concerning husband's expenditures from a joint bank account containing about $110,000 at the time of separation. The uncontradicted evidence showed that husband paid $40,000 to the IRS, $33,610.51 to King's Daughters Circle, and $19.569.11 to Sallie Mae, among other expenditures. The money paid to the IRS covered husband's separate tax liability from 2002 in the amount of $2,814, with the remaining $37,186 going to the over $80,000 the parties owed from their joint 2000 tax debt. The money paid to King's Daughters Circle was for an income guarantee loan obtained before the separation, and the money paid to Sallie Mae was for student loan debt incurred during the marriage while husband attended medical school.

Another financial issue on which the parties presented evidence was the children's bank accounts. All three children had individual Mississippi Prepaid Affordable College Tuition Program accounts, as well as individual savings accounts. Each account, however, is held jointly with wife. Thus, wife has the ability to withdraw funds from any of these accounts at any time as evidenced by her withdrawal of $5,100 from one of the MPACT accounts since the separation.

After the commissioner issued his report, the circuit court overruled the parties' exceptions, except for re-referring the issue of child custody, and entered a final decree of divorce on January 28, 2005. As part of the decree, the parties are to pay their own attorney's fees. The trial court also ordered that the marital residence, which wife had sought to retain, be sold and any proceeds remaining after paying off the mortgage be split evenly. Following the entry of the final decree, wife appealed to this Court.

II.

"A court may under appropriate circumstances impute income to a party seeking spousal support." Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). Any decision to impute income is within the sound discretion of the trial court and should not be overturned unless "plainly wrong or unsupported by evidence." Blackburn v. Michael, 30 Va. App. 95, 103, 515 S.E.2d 780, 784 (1999). However, the evidence must be sufficient to allow the trial court to reasonably project the income a party could earn. Hur v. Va. Dep't of Social Servs. Div. of Child Support Enforcement, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991). The evidence should allow the court to consider "earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities . . . ." Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998).

Because sufficient evidence exists to allow the trial court to impute income, the trial court did not abuse its discretion in so doing. Husband presented the expert testimony of Mr. DeMark, a certified rehabilitation counselor, who testified about specific job opportunities and their salaries available in the area to wife based on her individual qualifications without requiring additional education. Wife's education and work history are part of the record, as are records concerning her financial resources. While she personally testified about her ability to work, wife provided the court with no additional evidence to support her claim that she cannot work due to her mental health or

- 5 -

the needs of her two youngest children, now aged 12 and 15. She claims that her earning capacity is $14,000 per year but again provides no concrete examples of jobs with such low salaries and no reasons why she could not work at many of the positions discussed by Mr. DeMark. Husband presented the trial court with all of the information necessary to render a proper decision imputing income, while wife failed to introduce significant evidence to counter these claims or support her own. The trial court did not abuse its discretion in imputing income to wife.

### III.

Wife contends that the trial court erred in computing husband's income because it used an incorrect figure for the cost of his medical malpractice insurance and because it failed to consider the possibility that his income will be far greater than that guaranteed by his employment agreement. Finding that the trial judge did incorrectly calculate husband's income, we vacate all awards stemming from the error.

Code § 20-107.1(E) requires that a court consider "the obligations, needs and financial resources of the parties" when making a spousal support award. A court abuses its discretion if a spousal support determination lacks evidentiary support. Woolley v. Woolley, 3 Va. App. 337, 349 S.E.2d 422 (1986).

At the time of the commissioner's hearings, husband had recently accepted a position in West Virginia, with a salary guarantee of $198,000 spread over five months. After the initial five months, the expectation was that husband's income from performing surgeries would support him. The $198,000 was also paid early to enable husband to secure malpractice insurance. The evidence is uncontradicted that husband must purchase a "tail" policy from his Virginia malpractice carrier to cover possible claims arising from his work in Virginia costing $78,064. His traditional

malpractice insurance in West Virginia costs $20,934.27.[2] The sum total for husband's insurance, then, is $98,998.27, leaving him $99,011.73 in salary before taxes but after insurance for the calendar year 2004.

The trial court, however, found in the final decree that the malpractice insurance was to cost "either $39,032 or $78,064 or a combination; net after insurance payment is $80,904.00." This error stems from the fact that the tail policy's premium is double husband's annual Virginia malpractice premium, which had been $39,032. Thus, instead of adding the premiums for husband's tail policy and new West Virginia malpractice policy, the trial court added the full premium of the tail policy to the premium for one year of *Virginia* malpractice insurance. The result miscalculates husband's expected 2004 income by over $19,000. The statement of the trial court makes plain that the only factors considered in determining the husband's income for support purposes were the $198,000 salary and the costs of the malpractice insurance. Since the evidence and the mathematics involved clearly contradict the findings of the trial court concerning husband's income, the trial court abused its discretion.

Because it stems from the miscalculation of husband's income, we must vacate the award of $1,500 per month in spousal support. On remand, the trial court can better craft a support award by considering husband's actual income from his new job, rather than attempting to predict income based on the $198,000 income guarantee.

IV.

In addition to challenging the amount of the spousal support award, wife contends that the trial court erred in awarding support for only two years' duration. Code § 20-107.1(F) requires that

---

[2] The parties both use a figure of $20,934.27 as the premium for the West Virginia malpractice insurance. This number represents the premium for nine months of insurance, as husband needed in 2004 since his employment was to commence on March 22, 2004. The cost of a full year of malpractice insurance is $27,921.36. Due to our disposition of this issue, which number was more appropriate to apply is moot.

a court in setting support for a defined duration must provide written findings identifying "the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award." In a recent case, we upheld an award of spousal support for a limited duration where the trial court "detailed the circumstances supporting its decision." Bruemmer v. Bruemmer, 46 Va. App. 205, 210, 616 S.E.2d 740, 742 (2005). Here, neither the final decree nor any ruling from the bench addresses the required factors before awarding wife only two years' worth of spousal support. Because the trial court fails to provide any rationale supporting the limited duration of the award, we must vacate the order setting the two-year period for spousal support and remand for further consideration of the issue.

V.

Wife's next contention is that the trial court misallocated some of husband's marital accounts and improperly accounted for husband's use of marital funds to pay $19,000 toward his student loans and $40,000 toward post-separation income taxes. Code § 20-107.3 requires the trial court to determine which assets and debts of the parties are marital and which are separate. Our standard of review is abuse of discretion. Owens v. Owens, 41 Va. App. 844, 853, 589 S.E.2d 488, 493 (2003).

The trial court adopted the commissioner's report finding that husband's Legg Mason Pension & Profit Sharing account was part separate and part marital, with an aggregate value of $1,921.86. Given wife's contention and husband's admission that the entirety of the Legg Mason account is marital, this classification is in error. Additionally, wife claims that the value of the account is wrong as well. Finding no definitive evidence in the record as to value, we vacate the classification of the Legg Mason account as part marital and part separate and remand for further consideration.

Husband's $40,000 check to the IRS constitutes payment for both marital debt and separate debt. Uncontradicted IRS records show that $2,814 went toward payment of husband's 2002 federal taxes, while the other $37,186 went toward the parties' outstanding 2000 federal tax debt. As debt acquired after separation, then, $2,814 should have been treated as a dissipation of marital property for a nonmarital separate purpose after the last separation under Code § 20-107.3(E)(10), while the remaining $37,186 went toward marital debt.

As concerns husband's $19,000 payment toward his student loans, wife presents no argument to support her contention that this debt, acquired after the parties' marriage, is nonetheless separate debt. Because she fails to present "principles of law, the argument, and the authorities relating to" this contention, we will not consider it. Rule 5A:20. See also Thomas v. Commonwealth, 38 Va. App. 319, 321, 563 S.E.2d 406, 407 (2002).

We therefore affirm the trial court's equitable distribution with regard to the accounts and debts in question here with the exception of the $2,814 paid towards husband's separate 2002 federal tax debt, which we reverse and remand for equitable distribution.

VI.

In accordance with the commissioner's recommendation, the trial court ordered the equitable distribution of accounts held in the names of the children and wife, which the wife contends was in error. Each child has a Mississippi Prepaid Affordable College Tuition (MPACT) account, titled in wife's name with the individual child named as the beneficiary. Wife has access to the funds in these accounts and can withdraw any or all of the money at any time. These accounts were established during the marriage with marital money, making them marital property, despite the stated purpose of providing the children with a college education. See Code § 20-107.3(A)(2). Because wife can withdraw all of the money at any time, these accounts are *de facto* savings accounts held in her name. As such, they are subject to equitable distribution.

- 9 -

A court may make an equitable distribution only to the parties. Woolley, 3 Va. App. at 341, 349 S.E.2d at 425. Because it was beyond the court's power to distribute these accounts to the children and because they constitute marital property, the trial court did not err in its equitable distribution of the MPACT accounts.

The origin of the money in the children's savings accounts is less clear. Wife contends that the money belongs entirely to the children and represents the collection of birthday and holiday gifts to them, but husband disputes this contention. If the money does represent gifts to the children and not the deposit of marital funds, then those accounts should remain for the children and not be subject to distribution. However, withdrawals evidenced by the account statements remain unexplained. We therefore vacate the equitable distribution of the three savings accounts held jointly in wife's name with the children so that the trial court can determine the source of funds for these savings accounts and the probity of any withdrawals from the same.

VII.

Wife's next contention is that the trial court erred in failing to award her a share of husband's Army Reserve retirement. Husband entered the Army reserves in the early 1990s and remained in the reserves throughout the duration of the marriage, even serving in the Middle East after the parties separated. Finding that wife failed to carry her burden on this issue, we affirm the trial court's award.

"The court may direct payment of a percentage of the marital share of any pension . . . ." Code § 20-107.3(G)(1). Military pensions are personal property for the purposes of equitable distribution. Sawyer v. Sawyer, 1 Va. App. 75, 335 S.E.2d 277 (1985). Thus, the trial court had a duty to subject the property to equitable distribution and could have divided the marital portion.

The first step of such a distribution would be determination of the marital portion of the retirement. The value of the military pension earned after separation is not part of the marital share.

- 10 -

Code § 20-107.3(G); see Banagan v. Banagan, 17 Va. App. 321, 325, 437 S.E.2d 229, 231 (1993).

When a party seeks a portion of the marital share, as wife does here, that party must "present sufficient evidence to enable the judge to determine what percentage of the pension is the marital share . . . ." Gamer v. Gamer, 16 Va. App. 335, 343, 429 S.E.2d 618, 624 (1993) (citations omitted). A party bearing the burden of proof who fails to provide the court with sufficient evidence cannot prevail on that point. Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987) (holding trial court did not abuse its discretion when rejecting wife's valuation of pension when the evidence was insufficient to support it).

We find no evidence in the record to establish what portion of any pension husband may receive from the Army reserves is marital. Furthermore, husband's service in Kuwait and Iraq, during which time he earned significant points toward retirement, occurred after the parties' separation and is therefore not marital. Due to the disparity in evidence, wife failed to meet the burden of proof to show which portion of the pension is marital.

"Where the parties have been given a reasonable opportunity to provide the necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so," the trial court may make its equitable distribution without classifying every item of property. Id. Since the parties in this case had the opportunity to present the court with evidence concerning the percentage of the Army Reserve retirement that was marital but failed to do so, the trial court did not abuse its discretion in awarding husband all of the benefits.

Additionally, an award of one hundred percent of the marital share of a pension can be appropriate so long as it is within the discretion of the trial court and within the factors of Code § 20-107.3(E). Torian v. Torian, 38 Va. App. 167, 180-81, 562 S.E.2d 355, 362 (2002). Since he has earned only about 600 retirement points with around 10,000 required to receive benefits, in all likelihood husband will never receive any money from the reserve pension. Thus, the likely

valuation was $0, and the award of all of the benefits to him had no effect on wife's monetary award. Therefore, even if we assume *arguendo* that wife established the entire pension was marital, the court did not abuse its discretion in awarding it entirely to husband.

VIII.

Wife contends that the trial court erred in entering a final decree of divorce deciding property distribution and spousal support before making a determination of child custody, thereby bifurcating the issues. At the hearing to argue exceptions to the commissioner's report, the trial court re-referred to the commissioner the issues of child custody and child support. The final decree of divorce memorialized this ruling on custody but then conclusively decided the issues of equitable distribution and spousal support.

Code § 20-103 provides that a court having jurisdiction may, at any time, enter temporary orders concerning child custody and child support. Because the trial court in this instance had appropriate jurisdiction over the parties, it could enter any necessary temporary orders until entry of a final determination of custody. Nothing in the Code suggests that a court cannot enter a decree of divorce before a final determination of child custody so long as it complies with the requirements of Code § 20-124.2 concerning prompt adjudication of custody. Indeed, Code § 20-124.2(E) states that "[t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section or § 20-103 . . . ." Determinations of child custody can be changed after entry of a final order on a motion of the parties. See Code § 20-108. The court's powers over custody issues do not end upon the entry of the divorce decree, so we see no error by the trial court in entering a decree before making the final determination of child custody.

- 12 -

IX.

Wife next contends that the trial court incorrectly failed to award her attorney's fees. A trial court's decision whether to award attorney's fees in a divorce case is reviewed only for an abuse of discretion. Taylor v. Taylor, 27 Va. App. 209, 215, 497 S.E.2d 916, 918 (1998) (citations omitted). While the Supreme Court has previously stated that a court abuses its discretion when it does not award attorney's fees to a spouse entitled to maintenance and support where the other spouse has the financial ability to meet those needs, Thomas v. Thomas, 217 Va. 502, 505, 229 S.E.2d 887, 890 (1976), this Court has read Thomas to say that the ability to pay and an award of spousal support are only factors within the overall consideration of the issue. Cirrito v. Cirrito, 44 Va. App. 287, 300, 605 S.E.2d 268, 274 (2004). We affirm the trial court's denial of attorney's fees.

X.

For her final assignment of error, wife challenges the trial court's order that the marital residence be sold, with the parties splitting any of the proceeds. Code § 20-107.3(C) provides, in part, that "[t]he court may . . . order the division or transfer . . . of jointly owned marital property . . . . As a means of dividing or transferring the jointly owned marital property, the court may . . . order its sale . . . through such agent as the court shall direct . . . ." The Code, therefore, expressly contemplates that as part of the equitable distribution, a court can order the sale of jointly owned marital property. Such an order is within the sound discretion of the trial court. Dietz v. Dietz, 17 Va. App. 203, 216, 436 S.E.2d 463, 471 (1993) (citing Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992)).

Neither wife nor the record suggests any way in which the trial court abused its discretion by ordering the sale of the marital residence as part of the equitable distribution. Wife's argument for retaining the house simply cites the fact that her children live there. The record, meanwhile, shows that the trial court ordered the sale because it did not believe wife could afford to pay for the home.

Given that she has no job and was to receive only $1,500 in spousal support a month, the record supports the court's rationale.  Since the statute clearly grants the power to the court and no evidence suggests an abuse of discretion, we affirm the trial court's order that the marital residence be sold.

XI.

Therefore, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

Affirmed, in part,
vacated, in part,
and remanded.