Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

LADYSMITH RESCUE SQUAD, INC.

OPINION BY
v.  Record No. 091388      SENIOR JUSTICE CHARLES S. RUSSELL
June 10, 2010

DONALD H. NEWLIN, AS EXECUTOR
AND TRUSTEE UNDER THE WILL OF
MILLER HART COSBY, ET AL.

FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Harry T. Taliaferro III, Judge

This appeal questions the propriety of the circuit

court's division and partial commutation of a testamentary

charitable remainder unitrust over the objection of a

charitable beneficiary.  The material facts are undisputed and

the appeal presents a pure question of law.

Facts and Proceedings

Miller Hart Cosby (the testator) died a resident of

Caroline County on March 17, 2004, unmarried and with no

descendants.  His will dated March 2, 1998, together with a

codicil dated September 25, 2002, were admitted to probate.

The third article of the will gave all of the testator's

stocks, bonds and other securities to trustees, to hold in a

charitable remainder unitrust as recognized by certain

provisions of the Internal Revenue Code.[1]  The terms of the

---

[1] A charitable remainder unitrust "is a trust in which no
more than a specified percentage of the fair market value of
the trust's assets (as determined each year), for a specified
period, can go to the noncharitable beneficiaries; the rest

trust required the trustees to invest and manage those assets for the benefit of four named individuals (the income beneficiaries) who were to receive the net income earned by the trust, or 6% of the value of the trust assets, whichever is less.  The income was to be distributed annually, divided equally among them and payable in quarterly installments.  At the death of the last surviving income beneficiary, the trustees were to distribute the residue of the trust assets to two named charitable beneficiaries: The Upper Caroline Volunteer Fire Department (Upper Caroline) and the Ladysmith Volunteer Rescue Squad (Ladysmith), in equal shares for their general purposes, provided those entities were charitable organizations within the contemplation of the Internal Revenue Code at the time of distribution.[2]

The fifth article of the will contained a typical spendthrift clause, insulating the beneficiaries' interests from the claims of their creditors and denying the beneficiaries any right to encumber or otherwise control their shares until actually paid to them by the trustees.

---

belongs to a charity or charities designated in the trust." Estate of Tamulis v. Commissioner, 509 F.3d 343, 344 (7th Cir. 2007) (citing 26 U.S.C. § 664(d)(2) (2006 & Supp. II 2008)).

[2] The trustees were authorized to designate alternative charitable beneficiaries in their discretion if the named charitable beneficiaries should then fail to qualify as charities.

The will appointed Donald H. Newlin and William J. Howell (the trustees) as executors and trustees. After they qualified, the trustees instituted this proceeding in the circuit court as a complaint for advice and guidance, asking the court to determine the assets of the estate that were the residue subject to payment of debts, taxes and costs of administration. The trustees pointed out that the will had designated its fourth article as the residuary clause but that the assets passing under that fourth article would be insufficient to pay the estate expenses. They asked the court to ascertain what other bequests should abate in order to pay those expenses.

Several years of litigation ensued on the issues raised by the trustees' complaint. In April 2009, only two of the income beneficiaries, Gloria G. Essaye and William Welford Orrock, remained alive and the value of the trust corpus was between five and six million dollars. At that point, the trustees, the two surviving income beneficiaries and Upper Caroline (the moving parties) moved the court to authorize the trustees to divide the trust into two equal trusts, to be called the "Upper Caroline Trust" and the "Ladysmith Trust." Ladysmith objected to the division of the trust. The moving parties also moved the court to authorize the trustees to commute and terminate the Upper Caroline Trust by paying the

3

income beneficiaries in cash the commuted value of their interests in that trust based upon their life expectancies and distributing the remainder of that trust to Upper Caroline without awaiting the death of the last surviving income beneficiary.  The motions asked that the proposed Ladysmith Trust continue in effect, to be administered in accordance with the testator's will.[3]  Because all other issues in the suit were resolved by settlement among the parties, this appeal concerns only those two motions.

The court heard arguments of counsel and reviewed their memoranda of law.  In support of the motions, counsel for the trustees argued:  "Now, the only unanticipated circumstance[,] I submit, is that the beneficiaries . . . have said: 'We would rather have our money today than wait.' . . . . I believe the Court has the authority to do that; particularly, where the beneficiaries have said:  'This is our property and we want it today so we can eliminate investment risk; we can eliminate mortality risk, and we can handle our own funds.' "  (Internal quotation marks added.)

---

[3] These motions were made as a part of a settlement agreement, in which all parties joined.  The agreement resolved the issues raised by the trustees' complaint and recited that because Ladysmith objected to the motions to divide and commute the trust, those questions would be submitted to the court for its approval.

Ladysmith's counsel argued that the motions, if granted, would "take Dr. Cosby's will and tear it up" by violating the testator's explicitly stated intent to place the trust assets in the hands of his trustees to be managed by them, with specified benefits to certain named beneficiaries for their lifetimes, and upon the death of the last survivor of them, to pass to two charities. The court granted the motions to divide the trust and to commute and terminate one of the progeny of the division. We awarded Ladysmith an appeal.

Analysis

No evidence was taken in support of the disputed motions in the circuit court and the court made no express findings of fact. This appeal, therefore, presents pure questions of law, which we review de novo on appeal. Antisdel v. Ashby, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010).

In support of their motion to divide the testamentary trust, the moving parties relied on Code § 55-544.17, which provides:

> **Combination and division of trusts.** – After notice to the qualified beneficiaries, a trustee may combine two or more trusts into a single trust or divide a trust into two or more separate trusts, if the result does not materially impair rights of any beneficiary or adversely affect achievement of the purposes of the trust.

In support of their motion to commute and terminate the Upper Caroline trust, the moving parties relied on Code § 55-544.12(A), which provides:

> A. The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification shall be made in accordance with the settlor's probable intention.

With respect to division of the trust, the sole question before us is, therefore, whether division of the trust established by the testator's will would "materially impair rights of any beneficiary or adversely affect achievement of the purposes of the trust" within the intendment of Code § 55-544.17. If the answer to that question is in the affirmative, the trustees lacked authority to make such a division and the circuit court erred in approving such a division.

The testator expressly provided in his will that the trustees had authority to amend the trust "<u>for the sole purpose</u> of ensuring that this trust qualifies and continues to qualify as a charitable remainder unitrust." (Emphasis added.) No contention is made by any party that the trust failed, or would have failed if undivided, to so qualify. Therefore, authority to divide the trust can be found, if at all, only within the language of Code § 55-544.17, not from any expressed intention of the testator.

Our analysis does not end with the decision of that question alone, however, because the two motions were inextricably intertwined parts of a common design.  If either were denied, the other would be futile.  The common design was simply to enable Upper Caroline and the income beneficiaries to "have [their] money today [rather] than wait."  Ladysmith consistently objected to this common design on the ground that it would violate the testator's intent.  Division of the trust would be necessary to isolate Ladysmith, depriving it of standing to object to the motion to commute and terminate the Upper Caroline trust, because Ladysmith would have no pecuniary interest in that trust.  Thus, after a division was made, all parties to the Upper Caroline trust would be in a position to present a draft of an agreed order to the court for its commutation and termination.

The trustees argue that the adoption of the Uniform Trust Code (UTC) in 2005,[4] of which both Code sections quoted above were a part, effected a "dramatic change" in the trust law of Virginia.  We agree that the UTC materially changed the law, but not as dramatically as the moving parties contend.  The framers of the UTC were careful to preserve the guiding principles that have historically been the foundations of

---

[4] 2005 Acts ch. 935.

trust law.  The following provisions of the UTC, as adopted in Virginia, are illustrative:  Code § 55-541.06 provides that the common law of trusts and the principles of equity supplement the UTC except when modified by statute.[5]  Code § 55-541.05(B) provides that the express terms of a trust prevail over many provisions of the UTC, including the power to divide a trust under Code § 55-545.17.  For the protection of charitable trusts, the Attorney General is given the rights of a "qualified beneficiary" by Code § 55-541.10(D).

We conclude that the UTC has not altered the fundamental principles that in construing, enforcing and administrating wills and trusts, the testator's or settlor's intent prevails over the desires of the beneficiaries, and that intent is to be ascertained by the language the testator or settlor used in creating the will or trust.  Walton v. Melton, 184 Va. 111, 115, 34 S.E.2d 129, 130 (1945).  The UTC has not so altered the law as to permit beneficiaries, after the death of a testator, to defeat the terms of his will that postpone their enjoyment of his bounty, merely because they "would rather have [their] money today than wait."

---

[5] To the extent any provisions of the UTC are in derogation of the common law or the principles of equity, they must be strictly construed.  Britt Construction, Inc. v. Magazzine Clean, LLC, 271 Va. 58, 63, 623 S.E.2d 886, 888 (2006).

There is no evidence in the record, and no contention is made, that the trust assets have been mismanaged,[6] that the trust has become uneconomic, that its objects have become unattainable, or that any other factor, aside from the desires of the beneficiaries, justifies amending it in any way.

Under the express terms of Code § 55-544.12(A), the circuit court had authority to modify or terminate the trust only in "circumstances not anticipated by the settlor" and when such "modification or termination will further the purposes of the trust." The moving parties argue that the settlor could not have foreseen that the beneficiaries would "rather have [their] money today than wait" and that they would resort to expensive litigation among themselves. We do not agree. Unfortunately, an examination of the records of this Court and others having similar jurisdiction demonstrates that beneficiaries of wills and trusts have, for centuries, engaged in such litigation with depressing frequency. It may fairly be said that the likelihood of such litigation increases in direct proportion to the amount in controversy. Suits of this kind are most often based upon the

---

[6] The circuit court complimented the trustees for their foresight in shifting trust assets from stocks and bonds to money market funds in a period of declining security markets, to the great advantage of the trust.

beneficiaries' desires to enhance their shares or accelerate their payment.

There is no reason to suppose, and no evidence in the record to show, that the testator did not anticipate those risks. The moving parties' argument is based upon pure speculation. The burden was upon them to prove that the circumstances upon which they rely to justify modification of the trust were "not anticipated by the settlor." Code § 55-544.12(A). The moving parties failed to carry that burden.

Further, it cannot be said the modifications made by the circuit court would "further the purposes of the trust." Id. The settlor expressed a purpose to obtain for his assets the most favorable treatment possible for estate tax purposes, but that was not his only purpose. He also expressed a purpose to provide a stream of income to named friends who were made income beneficiaries, but their distributions were not to invade the trust corpus and were to be paid out of trust income for their lifetimes. The income beneficiaries' benefits were shielded from their creditors and from their own interference by spendthrift provisions. In no event was payment of their benefits to be accelerated. The trustees were to manage the corpus, preserving it until the death of the last income beneficiary, and only then were they to disburse the residue to the charitable beneficiaries. The

10

modification made by the court did not further those purposes, but completely frustrated them.

The division of the trust was merely a device to accomplish the moving parties' desires without having to seek the approval of Ladysmith, the only party expressing a desire to defend the settlor's intent. Even that preliminary step "adversely affect[ed] achievement of the purposes of the trust" for the reasons stated above, and therefore contravened the provisions of Code § 55-544.17.

The moving parties contend that Ladysmith has no standing to dispute the commutation and termination of the Upper Caroline trust because Ladysmith has no pecuniary interest in that trust. The moving parties' argument is circular. Ladysmith's lack of standing is premised solely upon the validity of the circuit court's order dividing the testamentary trust into two parts, which we hold to be erroneous for the reasons stated. Ladysmith retains standing to object to the common design presented by both motions.

### Conclusion

Because we conclude that the circuit court erred in granting the moving parties' motions to divide the testamentary trust and to commute and terminate the Upper Caroline trust created by the division, we will reverse the judgment appealed from and remand the case to the circuit

11

court with direction to enter orders denying both motions and for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>