COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia

UNPUBLISHED

KIRK T. MILAM

MEMORANDUM OPINION[*] BY
v.      Record No. 0837-12-4             JUDGE ROSSIE D. ALSTON, JR.
                                         APRIL 30, 2013

SHEILA J. MILAM


FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
Jonathan C. Thacher, Judge Designate

Kirk T. Milam, *pro se*.

Peter W. Buchbauer (Buchbauer & McGuire, P.C., on brief), for
appellee.


Kirk Milam (husband) appeals from a final decree of divorce.  He contends that the trial

court erred in its rulings regarding child custody, child support, spousal support, equitable

distribution, and attorney's fees and costs.  Husband also assigns error to the trial court's rulings

on post-trial motions, including granting Sheila Milam's (wife) motion for clarification of the

final decree of divorce, and denying husband's motion to reconsider and his motion to stay

execution of the final decree of divorce.  For the reasons that follow, we affirm in part, reverse in

part, and remand the case for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Background[1]

On appeal, this Court reviews the evidence in the light most favorable to the party prevailing below, in this case wife.  Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).

So viewed, the evidence indicated that the parties were married in 1994.  The parties have five children together, three of whom are minors.  The parties separated in the spring of 2007 and wife filed a complaint for divorce on December 10, 2009, seeking a divorce on the grounds of adultery, legal and physical custody of the parties' minor children, and spousal and child support.

A.  Discovery Compliance and Motion for Sanctions

Shortly after filing for divorce, wife served husband with requests for production and interrogatories.  Wife's discovery requests sought information regarding husband's income, earnings, and any property husband believed to be his separate property.

While husband provided wife with his 2004 federal income tax return, he also noted that he had not filed tax returns since 2004.  Because he had failed to file federal tax returns for numerous years, husband invoked his Fifth Amendment right against self-incrimination, refusing to provide documents detailing his current income.  Husband also refused to respond to wife's requests for documents pertaining to husband's checking account, pay stubs, or other indicia of income for the calendar year, asserting that the requests were overbroad and overly burdensome, and that, because husband's income came from his legal practice, the requests asked for information that was protected by the attorney-client privilege.  Finally, with respect to wife's request that husband provide information supporting any claim to assets as his separate property,

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

- 2 -

husband responded that the requests would "be supplemented if it's determined that I have any separate property."

On May 18, 2010, wife filed a motion to compel husband to respond to wife's discovery request. Wife asserted that husband's interrogatory responses were insufficient because husband failed to provide the information sought in the interrogatories. Wife argued that husband "failed to effectively respond to most of the Request for Production of Documents by interposing privilege as a means of obstructing knowledge of the accounts he has . . . [and] objecting to providing documents acquired during the time of the marriage as overburdensome . . . ."

On September 20, 2011, wife filed a motion for sanctions. Wife asserted that husband "failed to address many of the deficiencies noted in [wife's] [m]otion to [c]ompel and also improperly claimed privilege in an attempt to prevent full and complete responses as [o]rdered." Accordingly, wife requested that the trial court prevent husband from advancing claims for or defenses to the issues raised in wife's complaint or, alternatively, to "limit[] [husband's] evidence to only the facts revealed in his specific answers to interrogatories."

During a hearing before the trial court on October 19, 2011, wife again raised her motion seeking sanctions, arguing that while husband filed supplemental answers to her interrogatories, the supplemental answers "failed to address many of the deficiencies that had been previously pointed out." In particular, wife alleged that husband "failed to provide full and complete answers," and claimed privilege to numerous requests, such that his responses were "deficient in several respects." Wife also brought to the trial court's attention that the court reporter sent the transcript of husband's first set of interrogatories to husband for his review, but husband did not return the transcript and, accordingly, the transcript was not filed with the trial court.

In reviewing wife's motion to compel, the trial court considered husband's failure to file federal income taxes and the effect of that failure on the discovery process. The trial court

referenced, for example, husband's response to wife's interrogatories where, under the heading "Financials," husband responded "my tax bracket, the amount of taxes I must pay, the allocations, deductions . . . ." But, the trial court noted, husband had not filed tax returns for 2009 or 2010 and, thus, the trial court found his response was not an adequate answer to wife's request.

In view of husband's repeated failure to adequately respond to wife's interrogatories, the trial court granted wife's motion for sanctions, holding that the first set of interrogatories would not be considered because they were not sworn to and filed with the trial court. The trial court did allow husband to use his second set of interrogatories, though the trial court ruled that husband "[could] not offer any evidence which [was not] included in the[] [second] interrogatories."

### B. Custodial Evaluation

Husband filed a motion for custodial evaluation on August 5, 2010, requesting the trial court appoint a mental health professional to perform an evaluation of the parties and their infant children. The trial court granted husband's motion and appointed Dr. Michelle Nelson to conduct a full custodial evaluation. The trial court's order granting husband's motion stated that, "[t]he parties have agreed that [husband] shall initially pay for the costs of the custodial evaluation; however, the [trial court] will make the ultimate determination as to the apportionment of the costs between the parties if the parties cannot otherwise agree."

Sometime after the trial court granted husband's motion,[2] Dr. Nelson filed with the trial court a rule to show cause, alleging that husband had yet to pay the custodial evaluation fees. The trial court addressed husband's failure to pay Dr. Nelson's fees during a hearing on

---

[2] The exact date of Dr. Nelson's rule to show cause is not apparent from the record before this Court.

September 26, 2011, clarifying that husband was to initially pay Dr. Nelson's fees and the trial court would consider apportioning the costs between the parties at a later hearing.

## C. Letter Opinion

The trial court issued a letter opinion on December 14, 2011, in which the trial court granted wife a divorce on grounds of adultery, resolved equitable distribution of the marital property, awarded wife spousal and child support, and imposed attorney's fees and costs on husband.

### 1. Findings of Fact

The trial court found that the parties had a "traditional" marriage in which husband worked outside the home and wife stayed at home and raised the children. Wife, a high school graduate, also worked sporadically in low wage-earning fields. Husband, an attorney, supported the family with his legal practice. The parties separated and wife filed for a divorce after learning that husband was engaged in an adulterous relationship, which husband admitted to at trial.

### 2. Equitable Distribution

The trial court's letter opinion included an equitable distribution award, which the trial court reached after considering the statutory factors detailed in Code § 20-107.3(3).

The trial court began by considering the marital residence, the parties' most significant asset. After crediting wife's testimony regarding the home's value, the trial court awarded the home to wife, concluding that it could "find no reason why [wife], as primary custodian of the three minor children should be displaced from the marital home."

The trial court then determined the value of the parties' 1990 Jeep Wrangler.

The trial court valued that Jeep Wrangler at $3,050. In doing so, the trial court based its assessment on the low end value of 1990 Jeep Wranglers as listed in the National Automotive

- 5 -

Dealers Association (NADA) guide, which wife submitted to the trial court. The trial court used the low end value because,

> [t]he only evidence elucidating any of the submitted value ranges is [husband's] testimony that the Jeep Wrangler sits in the rain, is not operable, and thus has no value. The NADA Guides report for this vehicle does not have a "rough-trade in value" or a value for an inoperable vehicle; in fact, the low range for the vehicle is described as "Low Retail Value" which assumes the vehicle "would be in mechanically functional condition." The Court simply does not have evidence to responsibly assign a value to a 1990 Jeep Wrangler in the condition described by [husband]. Weighing all the evidence in regards to the Jeep, the Court adopts the lowest end of the valuation range for that vehicle, at $3,050.

Turning next to a 2004 BMW, the trial court classified the 2004 BMW as marital property, though the trial court noted that husband purchased the car post-separation. The trial court reached its decision after concluding that it lacked credible evidence to conclude that the vehicle was separate property. While the trial court noted that husband's father testified that he gave husband the money to purchase the 2004 BMW, the trial court concluded that, "[h]is testimony on that subject was however limited by the [trial court's] ruling in limine interdicting the parties from introducing at trial information they wrongfully withheld from properly propounded discovery requests." Excluding this testimony, the trial court found no other evidence that would render the 2004 BMW separate property.

Finally, the trial court addressed husband's request that the trial court apportion an outstanding tax liability that the parties had acquired by failing to pay federal income taxes in previous years. After considering the factors set forth in Code § 20-107.3(E), the trial court apportioned the tax liability to husband. However, the trial court had significant difficulty in doing so, as husband failed to "present[] any evidence as to the amount[] of the outstanding liability." The trial court found that husband "was in complete control of the parties' marital finances" and "it was [husband's] decision alone to disregard the parties' tax obligations

- 6 -

throughout the relevant years." As such, the trial court found that husband came before the court requesting relief with unclean hands. In addition, citing Gilliam v. McGrady, 279 Va. 703, 710, 691 S.E.2d 797, 800 (2010), the trial court determined that because husband incurred the debt alone, a presumption arose that the debt was husband's separate property. According to the trial court, husband did not present evidence to overcome this burden. "To the contrary," the trial court found, "[wife submitted evidence demonstrating that husband] expended sums of marital money on gifts or vacations with his various paramours." Accordingly, the trial court ordered husband to pay the outstanding unliquidated tax obligation.

### 3. Child and Spousal Support

The trial court noted that "throughout [the] litigation [husband] ha[d] been obstreperous, uncooperative and unwilling to disclose his earnings and income [in order] to facilitate any [] calculation" of his income. In addition, the trial court found husband's testimony concerning his income and expenses lacked credibility, which, when combined with husband's "continuous obfuscation of data during the discovery process," required "the Court [to] determine support awards from the lifestyle needs established by [wife]." Accordingly, what "should have been [a] straightforward and uncomplicated" case proved quite difficult for the trial court.

The trial court awarded wife child support in the amount of $1,170 per month. Based upon the parties' then existing custody arrangement, the trial court noted that wife was the primary custodian of the children. The parties had five children together, of which four were owed a duty of support: three minor children to whom support was owed and one child who had reached majority, K.T., to whom support was owed until he graduated from high school. Under the parties' custody arrangement, the children lived with wife nine out of every fourteen days. K.T., who the trial court permitted to exercise visits with husband as he desired, lived with his father because it was closer to his school and his extracurricular activities.

The trial court also awarded wife spousal support. In making this award, the trial court considered the factors contained in Code § 20-107.1, though the trial court's primary consideration was the "large disparity in the income and earning potential of the parties." The trial court noted that wife had a sporadic employment history consisting of low wage-earning work and no current income. In contrast, the trial court noted that husband was an attorney with an active law practice, and concluded that sufficient evidence demonstrated that husband "ha[d] in the past and may in the future earn gross incomes in any given year in excess of $100,000."

Citing the parties' significant disparity in income and earning capacity, the trial court awarded wife spousal support in the amount of $2,830 per month, which the trial court found sufficient to maintain wife's "relatively frugal standard of living . . . to maintain a household in support of the children of which she has primary custody, to allow her to refinance the marital residence under her own name, and to be able to pursue educational and career opportunities."

D. Post-trial Motions and Final Decree of Divorce

On February 3, 2012, husband filed a motion for rehearing and, in the alternative, a motion for a hearing on the entry of an order of a final decree of divorce. In his motion for rehearing, husband requested that the trial court reconsider its rulings concerning admissibility of evidence, imposition of sanctions, equitable distribution, spousal support, child support, Dr. Nelson's fees, and attorney's fees. In his motion for a hearing on the entry of a final decree, husband requested a hearing on the terms of a final decree of divorce in the event that the trial court denied his motion to reconsider. Husband asserted that "significant areas of dispute remain" concerning the language of the final decree of divorce and that a hearing "is necessary and appropriate to resolve the areas of dispute so as to ensure that the final decree of divorce entered herein accurately and justly reflects the Court's ruling." The trial court denied both motions without hearing.

On March 21, 2012, wife filed a motion for clarification of the final order. Wife's motion requested that the trial court clarify ambiguities in the draft final decree of divorce; specifically, wife requested clarification of the rights and obligations of the parties to apportion any uninsured medical expenses, the date upon which support arrearages should be paid, and the date upon which the trial court's equitable distribution and attorney's fees awards should be paid.

Prior to responding to wife's motion for clarification, the trial court entered the final decree of divorce on April 4, 2012. In addition to formalizing the findings previously addressed in the trial court's letter opinion, the final decree ordered husband to pay wife's attorney's fees, which, "incident to the . . . preparation of post-trial matters," had increased to $82,000. The final decree of divorce also reiterated the trial court's September 26, 2011 custody order, which granted wife primary physical custody of the minor children.

On April 9, 2012, the trial court amended the final decree of divorce and ruled on the issues raised in wife's motion to clarify the final decree. The trial court ordered the parties to apportion any uninsured medical expenses in excess of $250 according to each party's proportion of their total combined income. The trial court also ordered husband to comply with the trial court's ruling awarding attorney's fees to wife within 180 days and with the trial court's equitable distribution award within sixty days.

On May 3, 2012, husband filed a motion to suspend execution of judgment. In his motion, husband "[sought] suspension of all parts of the judgment not already executed, including those dealing with property and equitable distribution, support (child and spousal) and attorney's fees." The trial court denied husband's request, without a hearing, noting that more than twenty-one days had passed since entry of the trial court's final order and therefore the trial court no longer had jurisdiction to provide husband any additional relief.

On appeal, husband assigns numerous errors to the trial court's actions. Because of the myriad factual twists and turns in this case and because this opinion has no precedential value, we discuss any additional facts that are relevant to specific assignments of error in our analysis below.

## II. Analysis

### A. Issues Abandoned or Waived

Husband advances thirty-eight assignments of error in his appeal. Upon our review, we find that husband has not included in his opening brief the principles of law or authorities related to the following assignments of error: 1, 4, 5, 8, 20, 22, 23, 26, 27, 28, 29, 35, and 38. See Rule 5A:20(e) (requiring appellant to include in the opening brief "the argument[,] including principles of law and authorities[,] relating to each assignment of error").

As this Court has expressed before, "a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e) [if] significant,'" permits this Court to "treat a question presented as waived." Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)); see Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (stating that unsupported assertions of error "'do not merit appellate consideration'" (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992))). Because we find husband's failure to comply with Rule 5A:20(e) significant, we consider the aforementioned assignments of error waived.

### B. Equitable Distribution

Husband assigns error to numerous aspects of the trial court's equitable distribution award. "[D]ecisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan

v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)). "In fashioning any equitable distribution award, the trial court must consider all the enumerated factors of Code § 20-107.3(E) in exercising its discretion, and [as] the 'Supreme Court and this Court have repeatedly held . . . it is reversible error for the trial [court] to fail' to do so." Gottlieb v. Gottlieb, 19 Va. App. 77, 94, 448 S.E.2d 666, 676 (1994) (quoting Robinson v. Robinson, 5 Va. App. 222, 227, 361 S.E.2d 356, 358-59 (1987) (citation omitted)).

### 1. Marital Residence

Husband asserts that the trial court failed to consider the statutory factors addressed in Code § 20-107.3(E) in awarding wife the marital residence and, thus, committed reversible error. Husband alleges that the trial court based its award solely on the desire to avoid displacing wife and the three minor children.

While

> "[t]he requirement that the trial court consider all of the statutory factors [contained in Code § 20-107.3(E)] necessarily implies substantive consideration of the evidence presented as it relates to all of the[] factors[, t]his does not mean that the trial court is required to quantify or elaborate what weight or consideration it has given to each of the statutory factors."

Pommerenke v. Pommerenke, 7 Va. App. 241, 250, 372 S.E.2d 630, 635 (1988) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). Rather, the requirement simply means "'that the court's findings must have some foundation based on the evidence presented.'" Id.

On review of the record, we find that the trial court considered the statutory factors in Code § 20-107.3(E) and based its decision on more than a desire to avoid displacing wife and the parties' three minor children. The trial court explicitly stated that it was "distribut[ing] the property to the parties [after] considering the factors present in [] Code § 20-107.3(E)." Moreover, the trial court made numerous factual findings concerning the factors identified in

- 11 -

Code § 20-107.3(E), including, among others, that husband's adultery caused the dissolution of the marriage and that wife, "as the primary custodian of the three minor children[,] should [not] be displaced from the marital home." See Code § 20-107.3(E)(5) (factors contributing to the dissolution of the marriage), (E)(11) (such other factors as the court deems necessary or appropriate to arrive at a fair and equitable award).

Because we find the trial court's award was made in consideration of the statutory factors identified in Code § 20-107.3(E) and the trial court's findings are supported by the record, we affirm the trial court's decision.

### 2. 2004 BMW

Husband assigns error to the trial court's determination that the 2004 BMW was marital property. For the reasons that follow, even applying a deferential standard to the determination of the trial court, we find that the trial court's classification of the 2004 BMW as marital property is not supported by the record and therefore reverse the trial court's classification of the 2004 BMW as marital property. See Bosserman v. Bosserman, 9 Va. App. 1, 9, 384 S.E.2d 104, 109 (1989).

In its letter opinion, the trial court stated that the vehicle was purchased post-separation, yet nevertheless classified the vehicle as marital property. The trial court acknowledged the testimony of husband's father, who testified that he gifted husband the money to purchase the vehicle, but concluded that his testimony was limited by the trial court's earlier ruling *in limine*, which precluded the parties from introducing information at trial that they wrongfully withheld during discovery. Absent such testimony, the trial court concluded that it lacked credible evidence "which would render the 2004 BMW separate property." Accordingly, the trial court classified the vehicle as marital property.

- 12 -

The trial court erred in finding that the vehicle was purchased post-separation but concluding that it lacked credible evidence to render the vehicle husband's separate property. While property acquired during the marriage is presumed marital, see Gilman v. Gilman, 32 Va. App. 104, 526 S.E.2d 763 (2000), property purchased after the parties' last separation is presumed separate, and the party seeking to have the property classified as marital has the burden of overcoming that presumption, see Price v. Price, 4 Va. App. 224, 229, 355 S.E.2d 905, 908 (1987). While the trial court was not required to find that the BMW was purchased post-separation and was entitled to reject or preclude husband's father's testimony, because the trial court found the vehicle was purchased post-separation, the vehicle *ipso facto* was presumptively separate property. Wife did not overcome this presumption. In fact, wife testified that *she* believed husband obtained the vehicle post-separation and, if in fact he did, she would acknowledge that it was his separate property.

Because the trial court found that husband purchased the vehicle post-separation, rendering the vehicle presumptively separate property, the trial court erred in classifying the vehicle as marital property in the absence of evidence overcoming this presumption. Therefore, we remand this issue to the trial court for classification of the 2004 BMW in accordance with this opinion and, if the trial court deems it necessary, to take further evidence on the value of the 2004 BMW.

### 3. 1990 Jeep Wrangler

Husband contends that the trial court erred in determining the value of the parties' 1990 Jeep Wrangler. In assessing husband's argument on appeal we note that "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid, 19 Va. App. at 407-08, 451 S.E.2d at 715. The trial court valued the Jeep based on the low-end value of the

NADA guide submitted by wife. This valuation was supported by the evidence and, therefore, we affirm the trial court's decision.

### 4. Tax Liability

Husband next assigns error to the trial court's ruling apportioning the parties' tax liability. Husband alleges that the trial court apportioned the tax liability without considering the statutory factors in Code § 20-107.3(E). We disagree.

Upon our review of the record, we find that the trial court considered the relevant statutory factors. In particular, we note that the trial court explicitly stated that it "distribut[ed] the property to the parties [after] considering the factors present in [] Code § 20-107.3(E)." Moreover, the trial court also found that husband was "in complete control of the parties' marital finances, and solely controlled those decisions regarding the satisfaction of [the parties'] tax liability," thus, "principles of fairness and equity demand[ed]" that husband bear sole responsibility for the debt. See Code § 20-107.3(E)(11) (such other factors as the court deems necessary or appropriate to arrive at a fair and equitable award). Because we find that the trial court did consider the factors identified in Code § 20-107.3(E), we affirm the trial court's decision.

### C. Child Support and Child Custody

Husband raises three assignments of error (assignments 3, 6, and 7) pertaining to the trial court's child support award. Husband alleges that the trial court erred by not considering the statutory factors detailed in Code § 20-108.2. Husband further asserts that the trial court erred by not considering the split custody guidelines when awarding child support to the parties' son, K.T., and by not applying the shared child support guidelines when awarding support to the parties' three minor children.

- 14 -

"'The determination of child support is a matter of discretion for the trial court, and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Cranwell v. Cranwell, 59 Va. App. 155, 166, 717 S.E.2d 797, 802 (2011) (quoting Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703 (1999)). "However, an error of law is by definition an abuse of a trial court's discretion." Id. (citing Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998)).

### 1. Presumptive Award of Child Support

Husband challenges the trial court's child support award, alleging that the trial court failed to calculate the presumptive amount of child support under Code § 20-108.2. The trial court entered an award of child support in the amount of $1170 per month. In reaching that figure, the trial court did not calculate the presumptive award under Code § 20-108.2. Rather, citing husband's "continuous obfuscation . . . during the discovery process," the trial court concluded that the evidence of husband's income was unreliable and based its award on the "lifestyle needs established by [wife]," and "not on any assertions of income . . . made by [husband]." Notwithstanding the well-documented circumstances supporting the trial court's conclusion that husband's "obstreperous" behavior obstructed what "should have been [a] straightforward and uncomplicated" case, we find that the trial court erred by not computing the presumptive amount of child support.[3] As we have previously stated, before establishing a party's child support obligation, a trial court must determine the presumptively correct amount of

---

[3] Application of Code § 20-108.2 may well result in the trial court reaching the same child support award as previously determined. In determining husband's income, the trial court has discretion to weigh the submitted evidence. Moreover, even if husband's limited and self-serving evidence provides the only basis for determining his income, Code § 20-108.2 identifies only the presumptively correct amount of child support, which can be rebutted if the award "would be unjust or inappropriate in a particular case as determined by relevant evidence pertaining to the factors set out in [Code] § 20-108.1." Code § 20-108.2(A); see also Code § 20-108.1(10) ("Earning capacity . . . of each parent;"), (14) ("Such other factors as are necessary to consider the equities for the parents and children.").

child support under Code § 20-108.2.  See Watkinson v. Henley, 13 Va. App. 151, 409 S.E.2d 470 (1991) (the starting point for determining the child support obligation of a party is to compute the presumptive amount using the schedule found in Code § 20-108.2(B)); see also Farley v. Liskey, 12 Va. App. 1, 401 S.E.2d 897 (1991) (stating that before any of the factors of Code § 20-108.1 can be considered, a trial court must first apply the child support guidelines of this section to determine the presumptively correct amount of child support).  From this record we are simply unable to determine, without engaging in speculation, what the presumptive amount of child support is.  Because the trial court did not determine the presumptively correct amount of child support, we reverse and remand the trial court's award of child support for additional proceedings consistent with this opinion.

## 2.  Split Custody

Husband next assigns error to the trial court's failure to apply Code § 20-108.2(G)(2)'s split custody guidelines in determining the appropriate child support award for the parties' eighteen-year-old son, K.T.  Husband contends that the trial court's failure to apply the split custody guidelines was error because the evidence submitted at trial indicated that K.T. spent the majority of his time with husband.

Code § 20-108.2(G)(2) states in pertinent part,

> In cases involving split custody, the amount of child support to be paid shall be the difference between the amounts owed by each parent as a noncustodial parent . . . with the noncustodial parent owing the larger amount paying the difference to the other parent . . . .
> For the purpose of this section and [Code] § 20-108.1, split custody shall be limited to those situations where each parent has physical custody of a child or children born of the parents . . . .

Notwithstanding husband's argument to the contrary, we find the record devoid of any evidence implicating the split custody guidelines.  See Code § 20-108.2(G)(2) (stating that the split custody guidelines apply only "to those situations where each parent has physical custody of

- 16 -

a child . . . born of the parents"). While the evidence presented at trial demonstrated that K.T. lived primarily with husband, the trial court granted wife physical custody of K.T. The trial court's final decree of divorce awarded child custody and visitation pursuant to the trial court's September 26, 2011 custody order. In particular, the final decree granted wife primary physical custody of the minor children. While K.T. was eighteen at the time of the final decree of divorce, he was a minor when the trial court issued the September 26, 2011 custody order and, thus, included in the trial court's award of physical custody to wife. Because husband did not have physical custody of K.T., the trial court's failure to consider the split custody guidelines was not error.

### 3. Shared Custody

Husband alleges that the trial court erred in awarding child support without considering the shared custody guidelines detailed in Code § 20-108.2(G)(3).

As addressed above, Code § 20-108.2 governs the determination of child support. The statute establishes a rebuttable presumption "that the amount of the award which would result from application of the guidelines set forth in this section is the amount of child support to be awarded." Furthermore, Code § 20-108.2 states that "[w]here a party has custody or visitation of a child . . . for more than 90 days of the year . . . [t]he presumptive support to be paid shall be the shared custody support amount . . . ."

While the parties disagree about the number of days per year that husband has visitation, it is clear from our review of the trial court's custody order that husband has visitation of his children for more than ninety days per year. Accordingly, we conclude that the trial court erred in failing to consider the shared custody guidelines, and we reverse and remand the trial court's child support award for a new award consistent with this Court's opinion.

- 17 -

D. Spousal Support

Husband assigns numerous errors to the trial court's award of spousal support. Husband alleges that the trial court erred in awarding spousal support without considering the factors identified in Code § 20-107.1, in awarding spousal support for an indefinite period of support, in awarding spousal support when wife failed to meet her burden of proving husband's income, and in awarding spousal support without evidence as to husband's income.

In determining whether to award spousal support, the trial court is granted broad discretion. Moreno v. Moreno, 24 Va. App. 190, 194, 480 S.E.2d 792, 794 (1997). "In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Fox v. Fox, 61 Va. App. 185, 203, 734 S.E.2d 662, 671 (2012) (quoting Woolley, 3 Va. App. at 345, 349 S.E.2d at 426). Nevertheless, "the trial court's findings 'must have some foundation based on the evidence presented.'" Id. Therefore, we hold that in a determination involving spousal support, if the court's findings do not have evidentiary support in the record, then the court has abused its discretion.

Upon our review, we find that the trial court properly considered the relevant statutory factors. In its December 14, 2011 letter opinion, the trial court explicitly stated that the spousal support award was made in consideration of the factors set forth in Code § 20-107.1. Furthermore, the trial court made factual findings related to the statutory factors. In particular, the trial court considered the significant disparity in earning capacity between husband and wife. See Code § 20-107.1(E)(9). The trial court noted that wife had a high school degree and had limited work experience in low-wage fields. The trial court also indicated that wife had no current income. Husband, on the other hand, is an active member of the Virginia Bar with the annual earning capacity of $100,000. The trial court also referenced husband's adultery. See Code § 20-107.1

- 18 -

("The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage."). Finally, the trial court noted that wife "sufficiently demonstrated a need for $2,830 to maintain the relatively frugal standard of living to which she has become accustomed, . . . to allow her to refinance the marital residence under her own name, and to be able to pursue educational and career opportunities." See Code § 20-107.1(E)(2) (standard of living established during the marriage), (E)(7) (property interest of the parties). Therefore, we hold that the trial court considered the statutory factors in determining its award of spousal support.

Husband next assigns error to the trial court's award of spousal support for an indefinite period. Because we find, as stated above, that the trial court considered the factors in Code § 20-107.1 and made appropriate findings identifying the factors supporting the spousal support award, we will not disturb the award except for clear abuse of discretion. Husband has not demonstrated that the trial court abused its discretion in awarding support for an indefinite period. Thus, we affirm the award.

Finally, husband argues that wife failed to meet her burden of proving his income and asserts that the trial court erred in awarding spousal support in the absence of evidence regarding his income. Husband cites no authority in support of either position. See Rule 5A:20(e). Wife, as the party requesting spousal support, bore the burden of proving only the facts necessary to support an award. See Andrews v. Creacey, 56 Va. App. 606, 696 S.E.2d 218 (2010); see also Fadness v. Fadness, 52 Va. App. 833, 846, 667 S.E.2d 857, 865 (2008) (finding wife's testimony of her financial status and submission of an expense sheet showing her monthly income and expenditures were sufficient to prove a prima facie need for support). Upon the facts of this case, as addressed in our discussion of the Code § 20-107.1 factors, we find that wife met her

burden to establish the facts necessary to support an award. We therefore affirm the trial court's award.

### E. Imputed Income

Husband assigns error to the trial court's failure to impute income to wife before determining child support and spousal support. Husband contends that wife was capable of working and argues that the trial court should have imputed income to wife of at least minimum wage. The trial court denied husband's request, noting that husband did not "provide the [trial] [c]ourt with any evidence as to what jobs [were] available to [wife] at her education and experience levels, nor what wages could be earned." Because we find on our review of the record that husband did not meet his burden to "present evidence 'sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated,'" McKee v. McKee, 52 Va. App. 482, 491, 664 S.E.2d 505, 510 (2008) (quoting Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 20 (2001)), we affirm the trial court's decision not to impute income to wife.

### F. Evidentiary Issues

The trial court held a hearing on equitable distribution and spousal support on October 19, 2011. During that hearing, wife testified about her income and expenses. In particular, wife testified that the mortgage payment on the parties' marital residence was $1,400 per month and that she could not find adequate housing for her family at a cheaper price. Wife stated that she based her testimony on "what [she] learned [during a conversation with a] realtor." Counsel for husband raised a hearsay objection, which the trial court overruled.

On appeal, husband assigns error to the trial court's hearsay ruling. Assuming *arguendo* that the trial court's ruling was error, we find the error harmless and affirm the trial court.

"In order to constitute reversible error, a trial court's ruling 'must be material and prejudicial to the interests of the party complaining of it.'" CSX Transp., Inc. v. Casale, 247 Va.

180, 183, 441 S.E.2d 212, 214 (1994) (quoting Taylor v. Turner, 205 Va. 828, 831, 140 S.E.2d 641, 643 (1965)). Under the circumstances of this case, the introduction of the hearsay evidence did not prejudice husband because the trial court did not base its award of the marital residence to wife on the alleged hearsay. The trial court awarded wife the marital residence because she was the "primary custodian of three minor children [and should not] be displaced from the marital home." Furthermore, in describing her monthly expenses, wife informed the trial court that she arrived at a number for housing based on the current mortgage payment for the marital home, and not on the amount she would need to find other suitable housing. The trial court's letter opinion referenced wife's testimony, stating that "[wife] sufficiently demonstrated a need for $2,830 to maintain . . . a household in support of the children of which she was primary custodian, [and] to allow her to refinance the marital residence under her own name . . . ." Assuming *arguendo*, the trial court erred by admitting wife's testimony regarding the realtor's statement, such error was harmless.

Husband also alleges that the trial court erred during the October 19, 2011 hearing by sustaining wife's objection to a question regarding her sexual history. During wife's testimony, counsel for husband asked wife "[whether] [she] had sexual relations with anyone other than [husband] since the date of [her] marriage." Wife's attorney objected. The trial court inquired whether husband's counsel had "a[] good-faith basis for asking the question" or if he was simply "fishing," to which husband's counsel responded, "[N]o, I do not know any specific information." The trial court then sustained wife's objection.

On appeal, husband asserts that the trial court erred in sustaining wife's objection. In reviewing the admissibility of evidence, we apply an abuse of discretion standard of review. Bell v. Commonwealth, 49 Va. App. 570, 576, 643 S.E.2 497, 500 (2007). After considering

the record in this case, we cannot say that the trial court abused its discretion in sustaining wife's objection. Accordingly, we affirm the trial court's decision.

## G. Attorney's Fees and Trial Costs

### 1. Attorney's Fees

Both parties submitted evidence regarding attorney's fees and requested that the trial court apportion attorney's fees. The trial court considered the parties' requests and apportioned fees in the December 14, 2011 letter opinion. Finding that husband's adultery caused the parties' separation and that husband prolonged and perpetuated the litigation, the trial court ordered husband to pay wife's attorney's fees, which, at that time totaled $75,534.05, though the trial court noted that "[a]dditional fees ha[d] undoubtedly been incurred subsequent[ly]." In announcing its ruling, the trial court also emphasized "the impracticality of requiring [wife] – destitute during the litigation but for pendente lite support . . . to afford representation."

On appeal from the trial court, husband assigns error to the trial court's order awarding attorney's fees to wife. Husband contends that the trial court abused its discretion in awarding attorney's fees to wife in light of husband's inability to pay, in light of the evidence that wife's mother paid wife's attorney's fees,[4] and in the absence of evidence that husband prolonged or

---

[4] Husband argues that the trial court abused its discretion in awarding attorney's fees to wife because "[wife] not only had a resource to pay her attorney's fees, they had in fact been paid by her mother." We find this argument unsupported by the record. While wife testified that her mother provided funds to cover her attorney's fees, wife characterized the payments as a loan. Husband has not cited any evidence in the record to challenge or contradict wife's characterization of her mother's monetary support as a loan. Moreover, husband had the opportunity to challenge wife's testimony through cross-examination or to present conflicting evidence at trial, but failed to do so. Finally, even assuming that husband challenged wife's testimony before the trial court, the trial court would still be permitted to credit wife's testimony over husband's. Bly v. Southern Railway Co., 183 Va. 162, 175, 31 S.E.2d 564, 570 (1944) ("It is the [trier of fact] not the [appellate] court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusions as to the facts."). Accordingly, because we find wife's testimony on this issue uncontradicted, we find no support for husband's argument.

perpetuated the litigation. In addition, husband contends that the trial court abused its discretion in awarding wife attorney's fees given the disproportion of the fees to the marital estate.[5]

Code § 20-99(6) states that in divorce cases, "[c]osts may be awarded to either party as equity and justice may require." "As used in this statute, the term 'costs' includes attorney's fees." Kotara v. Kotara, 55 Va. App. 705, 709, 688 S.E.2d 908, 910 (2010) (citing Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008)). "An award of attorney's fees to a party in a divorce suit is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case," Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987), and will be reversed only for an abuse of discretion. The abuse of discretion standard, "if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

Based on the record before us, we find that the trial court properly considered "the circumstances [of the parties,] and [the] equities of the entire case," in awarding attorney's fees to wife. Artis, 4 Va. App. at 138, 354 S.E.2d at 815. In awarding attorney's fees to wife, the trial court cited "[husband's] adultery to be the cause of the parties' separation, and [found] [husband] to be responsible for perpetuating and prolonging this litigation." The trial court also "recognize[d] the impracticality of requiring [wife] – destitute during the litigation but for the pendente lite support she has received – to afford representation." Because we find that the trial

---

[5] While husband claims that the trial court abused its discretion in awarding wife attorney's fees given the disproportion between the attorney's fee award and the size of the marital estate, he has not cited to any case law supporting his conclusion. See Rule 5A:20(e) (requiring that an opening brief contain "principles of law . . . and the authorities relating to each question presented"). Moreover, even if such disproportion would ordinarily be an abuse of discretion, we find no abuse of discretion here given the trial court's finding that husband "[was] responsible for perpetuating and prolonging t[he] litigation."

- 23 -

court considered the circumstances of the case, and we find no abuse of discretion, we affirm the trial court.

## 2. Trial Costs

During the proceedings below, husband requested that the trial court appoint a mental health expert to conduct a custodial evaluation of the parties. On November 15, 2010, the trial court granted husband's request and appointed Dr. Nelson to perform a custodial evaluation. In granting husband's request, the trial court stated that "[husband] was to 'initially pay for the costs of the custody evaluation,'" and the trial court would consider apportioning the costs between the parties at a later time. During a hearing on September 26, 2011, the trial court learned that husband had not paid Dr. Nelson's fees and again ordered that husband pay the initial costs of the custodial evaluation. In the December 14, 2011 letter opinion, the trial court noted that husband had yet to comply with the November 15, 2010 order. Accordingly, the trial court ordered in the final decree of divorce that husband "[will] be solely responsible for the payment" of Dr. Nelson's fees.

On appeal, husband alleges that the trial court erred in apportioning Dr. Nelson's fees to him based on the absence of evidence or indication that the trial court considered the appropriateness of apportioning such fees.[6] As with attorney's fees, the allotment of costs is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167 (1986). Given the circumstances of this case, we find that the trial court did not abuse its discretion in apportioning the costs of the custodial evaluation to husband. We therefore affirm the trial court.

---

[6] Husband also alleges that the trial court erred in apportioning Dr. Nelson's fees to him without considering his ability to pay and in granting Dr. Nelson's rule to show cause. Because we find that husband has not included in his opening brief the argument relating to both assignments of error, we consider both assignments waived and affirm the trial court's determination. See Rule 5A:20(e).

H. Motions and Post-trial Proceedings

1. Wife's Motion for Clarification

Husband asserts that the trial court committed numerous errors in granting wife's motion for clarification. We review the trial court's order granting wife's motion for clarification *de novo*. See Ladysmith Rescue Squad, Inc. v. Newlin, 280 Va. 195, 200, 694 S.E.2d 604, 607 (2010) ("No evidence was taken in support of the disputed motions in the circuit court and the court made no express findings of fact. This appeal, therefore, presents pure questions of law, which we review de novo on appeal.").

Initially, husband argues that the trial court violated his right to due process by granting wife's motion without hearing or notice of presentation of the order. We disagree.

As this Court has previously stated, "[t]he requirements of the due process clause are satisfied if a party 'has reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.'" Eddine v. Eddine, 12 Va. App. 760, 763, 406 S.E.2d 914, 916 (1991) (quoting Dohany v. Rogers, 281 U.S. 362, 369 (1930)). In the present case, the record demonstrates that husband had "reasonable notice and reasonable opportunity to be heard on the motion for clarification." Id. Wife filed her motion for clarification on March 19, 2012. Wife delivered a copy of the motion to husband's counsel on the same day. The trial court ruled on wife's motion twenty-one days later on April 9, 2012. During that twenty-one-day delay, husband did not request a hearing on the motion, nor did husband file a response to wife's motion. Rather, husband waited until the trial court ruled on wife's motion to object and raise his concerns with the motion.

For the foregoing reasons, we find that husband's due process rights were not violated by the trial court's grant of the motion for clarification.[7]

Husband next assigns error to the trial court's waiving endorsement of the order granting wife's motion for clarification under Rule 1:13. Husband contends that the trial court abused its discretion in dispensing with endorsement because "no one was present for the Court's ruling or decision," and the trial court's discretion to dispense with endorsement "does not allow the trial court to dispense with the opportunity to be heard on a [m]otion."

Rule 1:13 states, in pertinent part, that "[d]rafts of orders and decrees shall be endorsed by counsel of record, or reasonable notice of the time and place for presenting such drafts together with copies thereof shall be served pursuant to Rule 1:12 upon all counsel of record who have not endorsed them." Rule 1:13, however, goes on to state that "[c]ompliance with this Rule and with Rule 1:12 may be modified or dispensed with by the court in its discretion." Accordingly, absent an abuse of discretion, we will affirm the trial court's waiver of endorsement. See Singh v. Mooney, 261 Va. 48, 53, 541 S.E.2d 549, 552 (2001).

Because we conclude that husband had notice of wife's motion and, as addressed above, a significant opportunity to respond but chose not to do so, we find that the trial court did not abuse its discretion in dispensing with endorsement.

## 2. Husband's Motion to Stay Execution

Husband assigns error to the trial court's denial of his motion to stay execution of judgment. Husband argues that the trial court erred in ruling that it lacked jurisdiction to

---

[7] In addition to this assignment of error, husband also alleges that the trial court erred in granting wife's motion without providing notice that such motion would be considered and ruled upon without hearing. To the extent this assignment raises a distinct claim, i.e., distinct from husband's assertion that the trial court violated his due process rights in ruling on the motion without hearing, we find no error for the same reasons noted, supra, and affirm the trial court.

consider his motion because it was filed more than twenty-one days after entry of the final order. We disagree.

On appeal, husband does not contest that he filed his motion more than twenty-one days after the trial court's final order. See Rule 1:1 (divesting a trial court of jurisdiction at twenty-one days after entry of a final order). Rather, husband argues that his motion was not barred by Rule 1:1 because the motion did not "seek to modify, vacate, or suspend the ruling contained in the Final Decree of Divorce. Rather, it merely [sought] to postpone the date when the terms of the Final Decree of Divorce and April 9, 2012 Order will be carried out, i.e., during the pendency of the appeal." Husband relies on Davidson v. Commonwealth, 246 Va. 168, 171, 432 S.E.2d 178, 179 (1993), to support his argument.

We find husband's reliance on Davidson misplaced. In Davidson, the Supreme Court held that Rule 1:1 did not prevent the trial court from entering an order staying an execution date more than twenty-one days after the defendant's execution date was set. Id. at 171, 432 S.E.2d at 179-80. In reaching this conclusion, the Supreme Court noted that the order setting the defendant's execution "was not a final order because it was not a disposition of the whole subject before the court in [the defendant's] case." Id. at 171, 432 S.E.2d at 179. Additionally, the Court held that "Rule 1:1 does not preclude the entry of an order staying an execution date because such an order would not modify, vacate, or suspend [the defendant's] capital murder conviction and sentence of death." Id.

Unlike in Davidson, husband's motion sought to suspend execution of a final order, the trial court's final decree of divorce. Moreover, husband's motion requested suspension of the trial court's judgment in favor of the wife. In particular, husband requested "suspension of all parts of the judgment not already executed, including those dealing with property and equitable distribution, support (child and spousal) and attorney's fees." Accordingly, we conclude that

Davidson is inapposite, and we affirm the trial court's holding that it lacked jurisdiction to consider husband's motion.

## I. Attorney's Fees

Both parties have requested that this Court award attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Because this litigation "addressed appropriate and substantial issues and . . . neither party generated unnecessary delay or expenses in pursuit of its interests," we deny the parties' requests for fees incurred in this appeal. Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).

## III. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.